Thomas J. **BYRNES** and Francis R. Santangelo, Plaintiffs,

v.

**FAULKNER, DAWKINS & SULLIVAN** and Singer & Mackie, Inc., Defendants.

**FAULKNER, DAWKINS & SULLIVAN,** Counterclaim-Plaintiff,

v.

Thomas J. **BYRNES** et al., Counterclaim-Defendants.

No. 73 Civ. 670.

United States District Court, S. D. New York.

June 19, 1973.

Carro, Spanbock & Londin, New York City, for plaintiffs.

Jacobs, Persinger & Parker, New York City, for defendant Faulkner, Dawkins & Sullivan.

Borden & Ball, New York City, for defendant Singer & Mackie, Inc.

Lawler, Sterling & Kent, New York City, for counterclaim-defendant Tobey & Kirk.

GURFEIN, District Judge.

### THE STATE COURT ACTION

An action was begun in the Supreme Court, New York County by the plaintiffs, Byrnes and Santangelo ("Byrnes") against the defendants Faulkner, Dawkins & Sullivan ("Faulkner") for breach of contract. That complaint alleged that on June 7, 1971, the plaintiffs, through their broker, Tobey & Kirk ("Tobey"), sold, pursuant to a registration statement and prospectus, 44,000 shares of the common stock of White Shield Corporation ("White Shield") to Faulkner at a price of $14 per share, and 1,500 shares to Singer & Mackie, Inc. ("Singer") at 13¼ and 13⅛ per share. It alleged that "without just cause or excuse" each defendant purported to cancel the transaction in breach of its contract and that the plaintiffs were compelled to sell the rejected shares at a loss aggregating $219,180.79 against Faulkner and $5,964.51 against Singer.

The defendants, denying that their refusal to accept the shares tendered was "without just cause or excuse," interposed nine affirmative defenses, of which six related to claimed violations by plaintiffs or their broker Tobey of various provisions of the Securities Act of 1933 (15 U.S.C. § 77a et seq.) and the Securities and Exchange Act of 1934 (15 U.S.C. § 78a et seq.). *No counterclaim was interposed in the State Court action.*

### THE FEDERAL ACTION

The plaintiffs, being unwilling to have *the affirmative defenses* based on alleged violations of the federal securities laws passed on by the State Court, brought this action for a declaratory judgment, and to recover the same amounts they had alleged in their State Court complaint (28 U.S.C. §§ 2201, 2202; Fed.R.Civ.P. 57).

The declaratory relief sought is a judgment declaring that each of the affirmative defenses asserted by the defendants in the State action is insufficient in law.

In its answer, the defendant Faulkner realleged the affirmative defenses that had been interposed in the State action, and, in addition, interposed three counterclaims. Faulkner also joins Tobey as a counterclaim-defendant. In its amended answer, the defendant Singer withdrew the counterclaims it had interposed in its original answer.

## THE COUNTERCLAIMS

The first counterclaim alleges that Faulkner is entitled to a declaratory judgment that the affirmative defenses set forth in the answer of Faulkner in the State action are valid and sufficient in law and preclude plaintiffs from any right of recovery in the State action or herein.

The second counterclaim alleges that the counterclaim-defendants engaged in a plan to sell White Shield common stock owned by the plaintiffs and others in a distribution to Faulkner and other broker-dealers making a market in that common stock in violation of the rules and regulations of the Securities and Exchange Commission ("SEC") (presumably Rule 10b-6); that without knowledge of the plan or that the White Shield stock owned by the plaintiffs was being sold in a registered distribution, Faulkner on June 7, 1971 agreed to purchase from Tobey the 44,000 shares at $14 per share; that shortly thereafter, Faulkner sold 20,000 of the shares at an average price of $14\frac{3}{32}$ per share; that on June 15, 1971, when Faulkner discovered that the stock which it had agreed to purchase was part of a registered distribution, it cancelled the agreement and was forced to cancel its own sale of 20,000 shares which had shown a profit of $1,875.00.

The third counterclaim charges that the counterclaim-defendants violated Section 17 of the 1933 Act, § 10(b) of the 1934 Act and Rule 10b-5 thereunder, § 352-c of the New York General Business Law, and the rights of purchasers at common law in that they represented that the stock being sold was not part of a registered distribution; that they failed to disclose that they were effecting an illegal distribution by selling large blocks of the stock to broker-dealers making a market therein; that they failed to disclose that Tobey was acting as an underwriter in connection with the distribution; that the confirmation delivered to Faulkner constituted a "prospectus" which did not meet the requirements of § 10 of the 1933 Act; and that the confirmation was not marked "prospectus enclosed" or "registered," nor was there any indication that the shares to be delivered were part of a registered distribution.

On these two counterclaims Faulkner seeks a judgment of $1,875 for compensatory damages, plus interest from June 15, 1971, and $1,000,000 as punitive damages. It also seeks the costs and disbursements of this action, including reasonable attorneys' fees.

## THE MOTIONS

The plaintiffs now move (a) to dismiss the second and third counterclaims, pursuant to Fed.R.Civ.P. 12(b) and 56, for failure to state a claim upon which relief can be granted or for summary judgment; (b) in the alternative, pursuant to Fed.R.Civ.P. 12(b)(6) and 12(h) to dismiss for failure to state a claim or to strike as immaterial so much of the second and third counterclaims as seek recovery of punitive damages; (c) pursuant to Rules 13(h), 19(a) and 20(b) to dismiss the counterclaim against Tobey because it was joined as a party to the counterclaim without leave of Court and is not needed as a party for a just adjudication. Before considering the motions we must look to subject matter jurisdiction.

### I

### FEDERAL JURISDICTION

The effect of a declaratory judgment by this Court would be effectively to oust the State Court of its jurisdiction by virtue of res judicata or collateral estoppel if the federal action were tried first.

█ Both Byrnes and Faulkner appear to be satisfied to have the controversy decided in the Federal Court. In fact, the defendant Faulkner admits the allegations of federal jurisdiction in the complaint.[1] The Court must, nonethe-

---

1. The defendant Singer in its amended answer, on the other hand, denies informa-

tion sufficient to form a belief as to the truth of the jurisdictional allegation, al-

less, determine whether there is subject matter federal jurisdiction, for the United States District Court is a court of limited jurisdiction. Mansfield, Coldwater & Lake Michigan Ry. v. Swan, 111 U.S. 379, 4 S.Ct. 510, 28 L.Ed. 462 (1884).

There is no allegation of diversity of citizenship. The plaintiff asserts that the Court has jurisdiction of the subject matter by virtue of Section 22 of the Securities Act of 1933, 15 U.S.C. § 77v; Section 27 of the Securities Exchange Act of 1934, 15 U.S.C. § 78aa; and the Declaratory Judgments Act, 28 U.S.C. § 2201 and § 2202; and upon principles of pendent jurisdiction.

The Declaratory Judgments Act is merely procedural and confers no additional jurisdiction on the federal courts. Skelly Oil Co. v. Phillips Petroleum Co., 339 U.S. 667, 70 S.Ct. 876, 94 L.Ed. 1194 (1950). In the case at bar, the action "arises" under the State law governing contracts. Whatever claim the *defendant* may assert is not the "basis of the suit." Gully v. First National Bank in Meridan, 299 U.S. 109, 115, 57 S.Ct. 96, 81 L.Ed. 70 (1936). If the defendants had sought to remove the State Court case to the Federal Court they would not have succeeded. Thus, even when federal jurisdiction is exclusive with respect to matters "arising" under particular statutes, like the patent laws, questions involving patents may be decided, nevertheless, by the State Court, if the cause of action itself has not arisen under the patent laws. See Becher v. Contoure Laboratories, Inc., 279 U.S. 388, 391, 49 S.Ct. 356, 73 L.Ed. 752 (1929); American Harley Corp. v. Irvin Industries, 27 N.Y.2d 168, 174, 315 N.Y.S.2d 129, 263 N.E.2d 552 (1970); and see Lear Inc. v. Adkins, 395 U.S. 653, 676, 89 S.Ct. 1902, 23 L.Ed.2d 610 (1969); State of New York v. Transeience Corp., 73 Civ. 1451 (S.D.N.Y. June

1, 1973). See also Hart & Wechsler, The Federal Courts and the Federal System, p. 763, n. 2 (1953).

The circumstance that the *justification* by the defendant involves a construction of federal law is not material to a determination of under what law the suit is brought. American Well Works Co. v. Layne and Bowler Co., 241 U.S. 257, 260, 36 S.Ct. 585, 60 L.Ed. 987 (1916). Raising a claim based on a federal statute as a matter of defense will not support removal. Gully v. First National Bank, *supra*, 299 U.S. at 113, 57 S.Ct. 96.[2]

The bringing of the declaratory judgment action in this Court is an ingenious attempt to avoid the solid case law against removal in these circumstances. If there is *independent* federal jurisdiction, however, the bar to removal would be irrelevant, and jurisdiction, subject to considerations of comity, would be accepted.

The only claims asserted by the plaintiff for the assumption of jurisdiction are Section 22 of the Securities Act and Section 27 of the Exchange Act.

Section 22(a) confers jurisdiction on the District Courts . . . "of all suits in equity and actions at law brought to enforce *any liability or duty created by this subchapter*" (15 U.S.C. § 77v(a); emphasis supplied). It further provides that "[n]o case arising under this subchapter and brought in any State court of competent jurisdiction shall be removed to any court of the United States." *Id.*

The Congress intended to make jurisdiction even over suits brought to enforce liabilities "arising" under the Securities Act of 1933 concurrent in both the federal and state courts.

The affirmative defenses under the 1933 Act interposed in the State Court action would, under the Congressional

though no such denial appears in Singer's original answer.

2. As Professor Wechsler has suggested, "There is no need for the original jurisdiction when litigants rely on federal rights to furnish them a shield but not a sword." Federal Jurisdiction and the Revision of the Judicial Code, 13 Law & Contemporary Problems, 216, 234 (1948).

policy, be justiciable in the State Court. There is no reason of policy to thwart the Congressional intention by accepting jurisdiction in this action simply because removal as such is not sought and because the handle to federal jurisdiction is a declaratory judgment complaint instead.

Independent federal jurisdiction cannot be founded on Section 22 of the Securities Act because by no stretching of words can the state-created breach of contract claim by the plaintiff be an action to enforce a liability *created by the Securities Act*.

Section 27 of the 1934 Act provides that the District Courts shall have exclusive jurisdiction "of all suits in equity and actions at law brought to enforce any liability or duty *created* by this chapter or the rules and regulations thereunder." (15 U.S.C. § 78aa; emphasis supplied).

The state-created claim for breach of contract is not "brought to enforce any liability or duty created by this chapter or the rules and regulations thereunder." The defense of justification for the alleged breach of contract as something required by federal law does not change the nature of the *plaintiff's* claim.

It is not the plaintiff who is seeking relief for the alleged violation of Rule 10b–6 under Section 10 of the 1934 Act or of Section 17 of the 1933 Act. It is the defendant who is claiming it as a shield.[3]

If resort is had to 28 U.S.C. § 1331—the federal question jurisdiction statute—the reasoning is the same. The claim for relief simply does not "arise" under a federal statute.

It might be thought unfortunate that when all parties are willing to accept federal jurisdiction in an area where federal judges are presumably more experienced than state judges, such jurisdiction should be refused. But the jurisdiction of the federal courts is a matter for Congressional determination as interpreted by the Supreme Court of the United States, and is not subject to a jurisdictional largess by a particular judge.

There is, to be sure, a dearth of authority upon the use of the declaratory judgment procedure in this context. The guidelines seem so clear to me, however, that I must follow them until higher authority says otherwise. I must, therefore, go a step further than did the three-judge court in Tape Industries Association of America v. Younger, 316 F. Supp. 340, 348 (C.D.Cal.1970) when it said: "Although the case law is not entirely clear, a Declaratory Judgment suit based on an anticipated Federal defense is probably not a proper basis for federal jurisdiction." (citing cases)

If the question is deemed a close one it would be a disservice to the plaintiffs and to the counterclaim-plaintiff as well to try the action to its conclusion on a shaky and doubtful foundation of federal jurisdiction. The complaint must be dismissed for lack of federal jurisdiction over the subject matter.

## II

### THE COUNTERCLAIM AND FEDERAL JURISDICTION

■ Even though the complaint is dismissed for lack of jurisdiction, the compulsory counterclaim of Faulkner re-

---

3. The Commission had ruled in Matters of Jaffee & Company, CCH Fed.Sec.L.Rep. ¶ 77,805 (1970), aff'd in part, Jaffee & Co. v. SEC, 446 F.2d 387 (2 Cir. 1971) that a market maker of an over-the-counter security may not participate in a distribution of that security. A "market-maker" is a broker-dealer who regularly purchases and sells the stock in which he makes a market as principal and regularly enters quotations therefor in the "pink sheets" or through NASDAQ. *Jaffee* held that it is a violation of Rule 10b–6 under the 1934 Act for a selling broker to sell stock included in a registration statement to a market-maker, or for a market-maker to participate in the distribution, because it would be creating a market price by its own purchases and quotations. The Commission in *Jaffee* also refused to exempt shares originally included in a "shelf" registration.

mains if there is an independent basis of jurisdiction for it. Isenberg v. Biddle, 75 U.S.App.D.C. 100, 125 F.2d 741, 743 (1941); Switzer Brothers, Inc. v. Chicago Cardboard Co., 252 F.2d 407, 410 (7 Cir. 1958); Spivak v. United States, 254 F.Supp. 517, 523 (S.D.N.Y. 1966); 3 Moore's Federal Jurisdiction § 13.15[1] n. 3, p. 379. In the case at bar, the counterclaim of Faulkner alleges claims for relief under Section 10 of the 1934 Act and Rule 10b–5 thereof as well as under Section 17 of the 1933 Act. These are clearly federal claims under Section 27 of the 1934 Act and Section 22 of the 1933 Act and are an independent basis for federal jurisdiction.

It is a *compulsory* counterclaim because it "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim" Fed.R.Civ.P. 13(a).[4]

Since the Faulkner counterclaim remains, therefore, we must consider whether the complaint of Byrnes if interposed as defense and counterclaim to Faulkner's counterclaim would support a basis for federal jurisdiction.

In Great Lakes Rubber Corp. v. Herbert Cooper Co., 286 F.2d 631 (3 Cir. 1961) the complaint having been dismissed, the counterclaim, as here, remained because of independent federal jurisdiction. The plaintiff then, still without independent federal jurisdiction, interposed an answer together with the same claim for relief, as a counterclaim. The Court found that the former plaintiff's claim was now a compulsory counterclaim, and that, hence, there was ancillary jurisdiction to entertain it. In the case of a compulsory counterclaim no independent federal jurisdiction would be required. Moore v. New York Cotton Exchange, 270 U.S. 593, 46 S.Ct. 367 (1926).

Since the counterclaim stands as a complaint properly cognizable in the federal court, the present plaintiffs may interpose an answer to the counterclaim and assert their own counterclaim for ancillary relief, provided that their counterclaim is a proper compulsory counterclaim under Fed.R.Civ.P. 13(a).

There is no doubt that the claim for breach of contract "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim." Rule 13(a). It is, accordingly, a compulsory counterclaim. And substantially the same considerations that determine whether a counterclaim is compulsory also decide whether the Court has ancillary jurisdiction to adjudicate it. See Great Lakes Rubber Corp., *supra*, 286 F.2d at 633. Byrnes' claim bears a "logical relationship" to Faulkner's claim. United Artists Corp. v. Masterpiece Productions, Inc., 221 F. 2d 213, 216 (2 Cir. 1955). It would be in the interest of judicial economy to have both claims adjudicated in the same forum. Jurisdiction over the Faulkner counterclaim is exclusively in the federal court insofar as it seeks affirmative relief under the 1934 Exchange Act (§ 27; 15 U.S.C. § 78aa).

I will, accordingly, dismiss the complaint for lack of federal subject matter jurisdiction and sustain the counterclaim as properly within the subject matter jurisdiction of the Court. The plaintiff is given leave to answer the counterclaim and to file its own counterclaim. I shall hold the motion to strike the second and third counterclaims and to dismiss Tobey as a party in abeyance until the case is again at issue. At that time Byrnes may move, without additional supporting papers or memoranda of law, for the same relief it now seeks. When the matter is in such posture I shall decide the present motion. Since the defendant Singer has interposed no counterclaim, there is no federal jurisdiction as to

4. I leave open the question whether the first counterclaim standing alone which seeks merely a federal declaratory judgment of the validity of federal defenses interposed in a state action, is sufficient basis for federal jurisdiction. The counterclaim as an entire pleading supports federal jurisdiction and the question posed by the first counterclaim needs no answer now.

Singer and the action will be dismissed as to it.

Perhaps a word of explanation should be given for the result reached by so circuitous a route. In my judgment it is not permissible for the District Court to fudge the question of federal jurisdiction. The use of the declaratory judgment procedure, as exemplified by this case, may not be allowed to pass *sub silentio*, for even though the precedents set by this Court are not high authority, rulings by silence have a way of becoming precedents. It is better, therefore, to choose the harder route. When one retraces his steps another day he is not as likely to stumble.

The complaint is dismissed with leave to follow the pleading route suggested in this opinion.

It is so ordered.