UNITED STATES of America,
Plaintiff-Appellee,

v.

Paul S. COOPER, Defendant-Appellant.

No. 9–6.

Temporary Emergency Court of Appeals,
Aug. 30, 1973.

Robert N. Harris, Jr., Los Angeles, Cal. (Karl K. Ransom, Los Angeles, Cal., with him on the brief), for defendant-appellant.

David H. Fox, Asst. U. S. Atty., Los Angeles, Cal. (William D. Keller, U. S. Atty., Eric A. Nobles, Asst. U. S. Atty., with him on the brief), for plaintiff-appellee.

Before CARTER, VAN OOSTERHOUT and CHRISTENSEN, Judges.

CARTER, Judge.

The defendant Paul S. Cooper appeals from a judgment of convictions entered by the District Court for the Cental District of California on October 2, 1972. The crucial question facing this court, the Temporary Emergency Court of Appeals (hereafter T.E.C.A.), is whether or not we have jurisdiction over the appeal.

Cooper was charged in a ten-count indictment with violations of 18 U.S.C. §§ 371 and 1001, and 6 C.F.R. §§ 301.101, 301.502(f), 301.601 and 301.602. The events leading up to these charges occurred in late 1971 and early 1972, during which time Cooper, an owner of apartment units in Los Angeles, allegedly violated rent controls by raising his rent from $75 per month to $92 per month.

On three separate occasions—on December 27, and 30, 1971, and on January 18, 1972—agents of the Internal Revenue Service warned Cooper about illegal rent increases. Apparently the warnings went unheeded, for Cooper's rents on twenty-four units were raised.

On March 22, 1972, an agent of the Internal Revenue Service served Cooper with a notice of violation regarding rent

increases. According to the testimony of a Mrs. Harris, who operated the aparments as manager, Cooper told her on that same day to demand signed statements from several old tenants that no rents had been raised. Mrs. Harris further testified that Cooper instructed her to threaten these tenants with eviction notices if they refused. Four out of five tenants signed the statements.

Cooper then wrote to an Internal Revenue Service agent indicating that such statements had been signed and enclosing copies. He further represented that, although rents had not been raised, the tenants had begun paying an additional $17 for maid service, telephone service, and message service; and that therefore only $75 of the overall monthly payments of $92 was for rent.

On the basis of these events, the ten-count indictment was brought against Cooper and he was tried to the court.

Count 2 charged Cooper with a conspiracy under 18 U.S.C. § 371. A judgment of acquittal was entered on this count.

Count 3 charged a violation of 6 C.F.R. §§ 301.601 and 301.602 by failure to keep rent records and make them available for inspection. On this count the court found Cooper not guilty.

Counts 5, 6, 7, 8, 9 and 10 charged unlawful rent increases under 6 C.F.R. § 301.101, a regulation promulgated pursuant to the Economic Stabilization Act Amendments of 1971[1] (hereafter the Stabilization Act). On these six counts the court found Cooper civilly liable but not criminally liable. Apparently the court found that rents had in fact been illegally raised, but that the violations were not willful and thus not criminal.

Count 4 charged Cooper with taking retaliatory actions against his tenants in violation of 6 C.F.R. § 301.502(f). On this count he was found guilty.

Count 1 charged Cooper with willfully and knowingly making false representations about material facts within the jurisdiction of the Department of the Treasury, the Internal Revenue Service and the Price Commission.[2] This is a felony under 18 U.S.C. § 1001. On this count the court found Cooper guilty.

Because the court found Cooper had committed both civil and criminal wrongs, two judgments were entered separately. On September 1, 1972, a judgment on Counts 5, 6, 7, 8, 9 and 10 was filed, imposing a civil penalty of $2,500 on each count for a total of $15,000 and providing that the United States had a judgment against Cooper for that amount. Then on October 2, 1972, the judgment of conviction on the criminal counts was entered, providing that "the imposition of sentence on

1. P.L. 92–210, 92nd Congress, S. 2891, December 22, 1971, 85 Stat. 743.

2. "On or about March 31, 1972, in Los Angeles County, within the Central District of California, after receiving a notice of violation of the Rent Stabilization Regulations of the Economic Stabilization Program, defendant PAUL S. COOPER did willfully and knowingly make and cause to be made false and fraudulent statements and representations concerning a material fact within the jurisdiction of the Department of the Treasury, the Internal Revenue Service, and the Price Commission, departments or agencies of the United States, by submitting and causing the submission to the Internal Revenue Service of a letter and tenant certificates regarding defendant's purchase and operation of an apartment house located at 6075 Franklin Avenue, Hollywood, California, which falsely and fraudulently stated and represented the following, as the defendant then and there well knew: That rents had not been raised in the last six months; that the tenants were paying $75.00 per month rent and $17.00 per month for maid service, phone answering service, and message service; that these services were requested by the tenants effective January 1, 1972; and that the tenants had no complaints about their rentals whatsoever. Said false and fraudulent statements and representations were submitted by the defendant in an attempt to trick and deceive the Internal Revenue Service into believing that he had not unlawfully raised any rents at the Franklin Avenue apartment house; and that his actions were in full compliance with the rent regulations of the Economic Stabilization Program.

All in violation of Title 18, United States Code, Section 1001."

Counts 1 and 4 is suspended and the defendant placed on probation for a period of one (1) year upon the condition that the defendant pay within one year the civil penalty heretofore imposed herein."

At this time Cooper took steps which ultimately brought this case to the T.E. C.A. On October 12, 1972, he filed a notice of appeal with the Clerk of the United States District Court. It read:

"Defendant, Paul S. Cooper, hereby appeals from the judgment of conviction entered in the above entitled case on October 2, 1972.

"Defendant was placed on probation for the term of one year upon condition that civil penalties in the total amount of $15,000 be paid within a period of one year and probation to terminate upon payment of the penalties."

No notice of appeal was ever filed from the civil judgment of September 1, 1972, except insofar as the notice of appeal on October 12 might be considered a notice of appeal from that civil judgment as well as from the criminal judgment.

No notice of appeal from either the civil or criminal judgment was filed within 30 days with the Clerk of the T. E.C.A., as required by § 211(b)(2) of the Stabilization Act[3] and by Rule 16(a) of the T.E.C.A.[4]

Thus Cooper followed standard procedures for appealing the judgment of October 2, 1972, to the Ninth Circuit Court of Appeals, but did not take the prescribed steps for appealing that judg-

ment to the T.E.C.A. As regards the September 1, 1972, civil judgment, he did not file an express notice of appeal to either court.

When Cooper gave notice of appeal from the judgment of October 2, 1972, the district court, in its customary manner, forwarded the notice and the record to the Clerk of the Ninth Circuit.

On March 23, 1973, the Ninth Circuit Court of Appeals, by order of a motions panel, transferred the entire appeal to the T.E.C.A. for all further proceedings, on the grounds that "the appeal was improvidently taken to this court and that sole and exclusive jurisdiction to review the matter is vested by statute in the Temporary Emergency Court of Appeals, established by the Economic Stabilization Act of 1970, as amended; that the purported appeal should not be dismissed, but the entire matter, including the record, briefs, etc., should be transferred from this court to said Temporary Emergency Court of Appeals."

The questions presented to us are:

(1) Was the conviction on Count 1 (18 U.S.C. § 1001) a case or controversy arising under the Stabilization Act or regulations or order issued thereunder?

(2) Does the T.E.C.A. have jurisdiction on the appeal from the conviction on Count 1, or is jurisdiction on that appeal vested exclusively in the Court of Appeals for the Ninth Circuit?

(3) Did the Court of Appeals for the Ninth Circuit have power or au-

---

**3.** Section 211(b)(2) of the Stabilization Act provides: "Except as otherwise provided in this section, the Temporary Emergency Court of Appeals shall have exclusive jurisdiction of all appeals from the district courts of the United States in cases and controversies arising under this title or under regulations or orders issued thereunder. *Such appeals shall be taken by the filing of a notice of appeal with the Temporary Emergency Court of Appeals within thirty days of the entry of judgment by the district court.*" (Emphasis added.)

**4.** "A notice of appeal in any civil or criminal case arising under the Economic Stabilization Act of 1970 as amended by the Economic Stabilization Act Amendments of 1971, P.L. 92–210, 85 Stat. 748–50, or a motion for injunctive relief as provided by Section 211(e)(2) of such Act as amended, *shall be filed with the clerk of this court within 30 days of the entry of judgment by the district court. This time limitation shall be binding upon both government appeals and private appeals.* If submitted by mail a notice of appeal shall be deemed filed as of the date postmarked by the United States Postal Service." (Emphasis added.)

thority to transfer the entire case or any part thereof to the T.E.C.A.?

(4) What disposition should the T.E.C.A. make of this appeal?

*Jurisdiction Over the Appeal From the Conviction on Count 1*

The district court clearly had jurisdiction of all counts of the indictment. Section 3231, Title 18 reads: "The district courts of the United States shall have original jurisdiction, exclusive of the courts of the States, of all offenses against the laws of the United States. . . ." And Section 211(a) of the Stabilization Act provides that "[t]he district courts of the United States shall have exclusive original jurisdiction of cases or controversies arising under this title, or under regulations or orders issued thereunder . . . "

■ There was no impropriety in the joinder of the various counts of the indictment. Rule 8(a) of the Fed.Rules of Crim.Proc. provides:

"Two or more offenses may be charged in the same indictment or information in a separate count for each offense, if the offense charged, whether felonies or misdemeanors or both, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan."

Under Rule 13 of the Fed.Rules of Crim.Proc. an indictment charging only the violation of 18 U.S.C. § 1001 and a separate indictment charging the offenses under the Stabilization Act could have been joined for trial.

■ Our real problem concerns the respective jurisdiction of the Court of Appeals for the Ninth Circuit and the T.E.C.A. The jurisdiction of the courts of appeals is created primarily by 28 U.S.C. § 1291, which reads:

"The courts of appeals shall have jurisdiction of appeals from all final decisions of the district courts of the United States . . . except when a direct review may be had in the Supreme Court."

The jurisdiction for the T.E.C.A. is created by Section 211(b)(2) of the Stabilization Act, which provides:

"Except as otherwise provided in this section, the Temporary Emergency Court of Appeals shall have exclusive jurisdiction of all appeals from the district courts of the United States in cases and controversies arising under this title or under regulations or orders issued thereunder. . . ."

We do not believe that the charge in Count 1, based on 18 U.S.C. § 1001, arises within the appellate jurisdiction of the T.E.C.A. We start with the premise that a conviction under 18 U.S.C. § 1001 would be appealable only to a court of appeals, under 28 U.S.C. § 1291, unless the Stabilization Act provides otherwise. We find nothing in Section 211(b)(2) of the Act which so provides. Section 211(b)(2) speaks of "controversies arising under this title or under regulations or orders issued thereunder." We do not think that Count 1, being based on 18 U.S.C. § 1001, was a controversy "arising under" any title of the Stabilization Act or under regulations or orders issued thereunder.

Count 1 (see n. 2) properly charged that the false representations set forth therein concerned material facts "within the jurisdiction of the Department of the Treasury, the Internal Revenue Service and the Price Commission." Even though this allegation followed the language of 18 U.S.C. § 1001,[5] an argu-

5. "18 U.S.C. § 1001. Statements or entries generally

Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and wilfully falsifies, conceals or covers up by any trick, scheme, or device a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent state-

ment has been made that the offense nevertheless arose under the Stabilization Act as provided in Section 211(b)(2). Such an argument is unsound. Although Count 1 involved a matter within the perimeter of activities assigned to, and carried on by, the Price Commission, nowhere does the Stabilization Act provide for a crime such as set forth in 18 U.S.C. § 1001.

The language in the Stabilization Act, "in cases and controversies arising under this title," would require a loose construction in order to cover the charge in Count 1 of false representations on matters of rent control. Such a loose construction is unacceptable in light of the traditional rule that courts of special jurisdiction should strictly construe their statutory grants of jurisdiction.

Moreover, there is no indication that Congress intended to include existing offenses, already covered by Title 18, under the umbrella of the Stabilization Act.[6] There was surely no need for such double coverage. The ordinary criminal statutes remain available to the prosecutor, and in fact the prosecutor in this case used such statutes in the indictment against Cooper.

We therefore hold that the charge in Count 1, based on 18 U.S.C. § 1001, was not a case or controversy arising under the Stabilization Act.

We hold further that the Court of Appeals for the Ninth Circuit had jurisdiction of the appeal from the conviction on Count 1 and that the notice of appeal was timely filed.

*The Transfer of the Appeal by the Ninth Circuit*

The next question presented is whether the Court of Appeals for the Ninth Circuit, having jurisdiction over the appeal on Count 1, as shown *supra*, had any jurisdiction over the counts arising under the Stabilization Act which enabled it to transfer part or all of the appeal to this court.

The action of the Ninth Circuit raises two inquiries: (1) Was there some sort of pendent jurisdiction over the Stabilization Act counts permitting the transfer of the whole case or of the counts based on the Stabilization Act; and, if not, (2) were there unique circumstances which nonetheless permitted the transfer of the whole case or the counts based on the Stabilization Act?

The Court of Appeals had exclusive jurisdiction of the appeal on Count 1. No valid transfer of that part of the appeal could be made to this court; there is no authority for the argument that the doctrine of pendent jurisdiction would allow such a transfer to occur. The doctrine applies in civil cases. United Mine Workers v. Gibbs, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966) states that pendent jurisdiction may exist in the civil context whenever claims arise under both federal and state claims and ". . . the relationship . . . permits the conclusion that the entire action comprises but one constitutional case." The Supreme Court noted that the federal and state claims were derived ". . . from a common nucleus of operative facts." It concluded that the doctrine was discretionary and ". . . [i]ts justification lies in consideration of judicial economy, convenience and fairness to litigants." (p. 726, 86 S.Ct. p. 1139). But in view of the lack of authority for an application of the doctrine in criminal cases, we hold the doctrine is not applicable here.

Another basis supports our holding that the T.E.C.A. does not have jurisdiction over the appeal on Count 1. We first note the limited sanctions contained in the Stabilization Act.

---

ment or entry, shall be fined not more than $10,000 or imprisoned not more than five years, or both."

6. Nothing in the congressional history of the Stabilization Act indicates such a purpose or effect.

Section 208 of the Stabilization Act reads:

"§ 208: Sanctions; criminal fine and civil penalty

"(a) Whoever wilfully violates any order or regulation under this title shall be fined not more than $5,000 for each violation.

"(b) Whoever violates any order or regulation under this title shall be subject to a civil penalty of not more than $2,500 for each violation."

Thus it was clearly the congressional intent that the criminal offenses created by the Stabilization Act would carry only the criminal sanction of a fine not exceeding $5,000 and a civil penalty. Imprisonment was not provided as a sanction.

■ On the other hand, the statutory provision on which Count 1 was based, 18 U.S.C. § 1001, provides for imprisonment, for one to ten years, and allows a fine of up to $10,000. Under general federal law a crime is a felony if a convicted defendant *could* be sentenced to a penitentiary for at least one year, regardless of what the actual sentence provides. Thus a violation of 18 U.S.C. § 1001 is a felony, even if the defendant, like Cooper, is given probation.

■ In the district court the U. S. Attorney joined felony counts under Title 18 with less serious counts under the Stabilization Act. As noted above, such joinder is permissible. But on appeal from the judgment, the joinder presents problems. Congress gave the T.E.C.A. appellate jurisdiction on convictions for violations of the special offenses of the Stabilization Act; Congress has not chosen to give the T.E.C.A. appellate jurisdiction over felony convictions under Title 18. Congress certainly did not contemplate that the T.E.C.A., a court of special competence, would expand its jurisdiction beyond the bounds fixed by the Stabilization Act.

The proper procedure below would have been the filing of two notices of appeals, one to the Court of Appeals for the Ninth Circuit as to the conviction on Count 1, and one to the T.E.C.A. as to the judgments on counts under the Stabilization Act. The fact that two records on appeal would be required, one for each court, cannot justify expanding the jurisdiction of the T.E.C.A. The extra work involved for the appellant in preparing two records is a simple burden that should not control our interpretation of the Act.

■ Since Counts 4, 5, 6, 7, 8, 9 and 10 arise under the Stabilization Act, we must decide whether we may still have jurisdiction on these counts. Over fifteen months elapsed between the filing of the notice of appeal in the district court and the transfer of the entire appeal to the T.E.C.A. on March 23, 1973. On March 26, 1973, by order of Chief Judge Tamm of the T.E.C.A., the transfer order was treated as a notice of appeal to the T.E.C.A. We are satisfied that Chief Judge Tamm merely treated the transfer as a notice of appeal out of time. The effect of his order was merely to have the record show a filing of a notice of appeal to the T.E.C.A. without deciding the effect of its untimeliness. That decision is one that we must now make.

Two Supreme Court cases, Thompson v. I. N. S., 375 U.S. 384, 84 S.Ct. 397, 11 L.Ed.2d 404 (1964), and Harris Truck Lines v. Cherry Meat Packers, 371 U.S. 215, 83 S.Ct. 283, 9 L.Ed.2d 261 (1962), provide insight as to the effect of untimely appeals when there exist "unique circumstances." The basic holding in these cases is that, if at a time when a party might take a timely appeal, he receives assurances from the district court that he need not appeal [*Thompson*], or that the time for appeal is extended [*Harris*], then he should not lose his right to appeal where the district court was in fact mistaken. But in our case

the appellant Cooper was in no way misinformed or misled by the district court. Thus the cases above are inapposite.

On the other hand, in Reed v. Kroger, 478 F.2d 1268 (T.E.C.A.1973) (per curiam), we held that a notice of appeal, mistakenly filed in the district court with reliance on the district clerk's assistance, required dismissal.

■ The general rule is that the necessity for filing of a timely notice of appeal is mandatory and jurisdictional. United States v. Robinson, 361 U.S. 220, 80 S.Ct. 282, 4 L.Ed.2d 259 (1960). Since Cooper failed to file a timely appeal with the T.E.C.A., we have no jurisdiction on the counts arising under the Stabilization Act.

### Disposition

Our disposition in the case is as follows:

The Ninth Circuit clearly had jurisdiction over Count 1. Its action in transferring that count along with the rest of the case to our court was beyond its power and was void.. Since the order transferring that count was void, we need make no order transferring that count back to the Ninth Circuit. Accordingly, the Ninth Circuit still has jurisdiction over the appeal from Count 1. The Clerk of the T.E.C.A. is directed to return the record to that court.

As to the remaining counts arising under the Stabilization Act, a notice of appeal to the Ninth Circuit Court of Appeals was not a proper notice of appeal. The Stabilization Act and rules of the T.E.C.A. clearly state that appeals must be taken to this court within the thirty-day period. Since no proper appeal has been taken to this court, and since even if the Ninth Circuit's transfer order is treated as a notice of appeal, it was untimely, the appeal from the counts based on the Stabilization Act is dismissed.[7]

---

7. Gratuitously we state that although we dismiss the appeal from the counts based upon the Stabilization Act, we have, nevertheless, reviewed defendant's contentions,

and had the appeal been properly taken as to these counts, we would have held the contentions of the defendant to be without merit.