**COASTAL STATES MARKETING, INC.,**
**Plaintiff-Appellee,**

v.

**NEW ENGLAND PETROLEUM CORPO-**
**RATION, Defendant-Appellant.**

**Docket 79–7330.**

United States Court of Appeals,
Second Circuit.

Argued June 12, 1979.

Decided Aug. 1, 1979.

Gary A. Woodfield, New York City (Eaton, Van Winkle & Greenspoon, New York City, of counsel), for defendant-appellant.

Michael Lesch, New York City (Arthur D. Felsenfeld and Shea, Gould, Climenko & Casey, New York City, of counsel), for plaintiff-appellee.

Before VAN GRAAFEILAND and NEWMAN,* Circuit Judges, and BONSAL, District Judge.**

NEWMAN, Circuit Judge:

This motion to transfer this appeal to the Temporary Emergency Court of Appeals (TECA) poses a substantial question concerning the appropriate allocation of appellate jurisdiction between a court of appeals and the TECA. The suit was brought by plaintiff Coastal States Marketing, Inc. (Coastal) for money alleged to be owed by defendant New England Petroleum Corp. (Nepco) for Coastal's sale of fuel oil to Nepco. Jurisdiction of this breach of contract action was grounded on diversity of citizenship. 28 U.S.C. § 1332. After completion of discovery but before the trial began, Nepco moved unsuccessfully to reopen discovery to develop a defense of illegality based on a contention that Coastal had overcharged Nepco in violation of mandatory price controls. 10 C.F.R. § 212.1 *et seq.* After a bench trial in the District Court for the Southern District of New York (Hon. Henry F. Werker, Judge) Nepco was found liable, and judgment was entered for Coastal in the amount of $192,936.

Nepco appealed from that judgment to this Court, complaining solely of the denial of the motion for additional discovery. Nepco brought to this Court's attention two circumstances alleged to warrant reopening of the judgment: 1) the Department of Energy had issued a Proposed Remedial Order to Coastal States Gas Corp., Coastal's parent corporation, alleging price control violations during a period relevant to Nepco's transactions, and 2) a Congressional subcommittee had conducted hearings concerning the legality of some of Coastal's fuel oil transactions. On October 31, 1978, this Court remanded, without prejudice, to permit Nepco to bring these circumstances to the attention of the District Court and to make an appropriate motion to the District Court. On November 10, 1978, Nepco moved in this District Court to reopen discovery to explore the legality of the transactions with Coastal, to amend its pleadings to include a counterclaim alleging illegality, to present additional trial evidence, and to vacate the judgment. On April 9, 1979, Judge Werker filed a Memorandum Decision denying Nepco's motion to vacate the judgment and denying all other requested relief. The decision adjudicated and rejected Nepco's claim of illegality, concluding that the transactions were exempt from mandatory price controls as "first sales" into United States commerce. 10 C.F.R. § 212.53(b).[1] Finding no basis for a claim of illegality, Judge Werker therefore denied all of Nepco's efforts to use this claim as the basis for further relief.

Nepco filed notices of appeal both in the District Court, to appeal to this Court the denial of the motion to vacate, and in the TECA, to challenge there the same ruling of the District Court. Nepco then sought and obtained a stay of further proceedings in the TECA and has now moved to have

---

* Judge Newman was United States District Judge for the District of Connecticut, sitting by designation, at the time of oral argument.

** The Honorable Dudley B. Bonsal, United States District Judge for the Southern District of New York, sitting by designation.

1. The Proposed Remedial Order issued by the Department of Energy concluded that Coastal's sales, including the transactions with Nepco, were subsequent to the first sale into United States commerce and not exempted by 10 C.F.R. § 212.53. Judge Werker pointedly disagreed with the Department of Energy's view of the applicability of the exemption.

the appeal in this Court transferred to the TECA. Nepco contends the TECA has exclusive jurisdiction under § 211(b)(2) of the Economic Stabilization Act of 1970, as amended (ESA), reprinted in the notes following 12 U.S.C.A. § 1904.

Section 211 of the ESA, the judicial review provision, was added by Congress in 1971. Economic Stabilization Act Amendments of 1971, Pub.L. No. 92–210, § 2, 85 Stat. 743 (1971). These provisions vest exclusive original jurisdiction in the district courts and exclusive appellate jurisdiction in the TECA over cases and controversies arising under the ESA. Section 211(b)(2) provides:

> Except as otherwise provided in this section, the Temporary Emergency Court of Appeals shall have exclusive jurisdiction of all appeals from the district courts of the United States in cases and controversies arising under this title or under regulations or orders issued thereunder
> . . . .

The mandatory petroleum price regulations, 10 C.F.R. § 212.1 et seq., which Nepco claims Coastal has violated, were promulgated under the authority of the ESA and the Emergency Petroleum Allocation Act of 1973 (EPAA), 15 U.S.C.A. § 751 et seq. Section 5 of the EPAA, 15 U.S.C.A. § 754(a)(1), incorporates the judicial review provisions of § 211 of the ESA. Thus, the issue on this motion to transfer is whether the instant appeal is a case or controversy arising under the ESA and the EPAA within the meaning of § 211(b)(2) of the ESA, and therefore within the exclusive jurisdiction of the TECA.

It is unusual to find a statutory scheme for appellate review that contemplates judgments from a single court being reviewed in one of two appellate courts of coordinate authority.[2] The allocation of jurisdiction between the TECA and the courts of appeals depends upon the scope of the TECA's exclusive jurisdiction. Three approaches are possible. First, the exclusive appellate jurisdiction of the TECA could be construed to be limited to those cases that "arise under" the ESA in the same sense that cases are said to "arise under" federal law for purposes of federal question jurisdiction (traditional "arising under" jurisdiction). Second, the exclusive appellate jurisdiction of the TECA could be broadly construed to include all cases involving any ESA issue, even if raised as a defense or in some other way that would not suffice for traditional "arising under" jurisdiction (TECA "case" jurisdiction). Third, appellate jurisdiction could be divided in a way that placed within the exclusive appellate jurisdiction of the TECA only those issues involving any aspect of the ESA (ESA issues),[3] while leaving to the court of appeals all other issues in the same case (TECA "issue" jurisdiction). This third approach could in some contexts be narrower and in some contexts broader than traditional "arising under" jurisdiction. It could be narrower if the TECA has no jurisdiction over non-ESA issues, even when joined with ESA claims and arising out of the same nucleus of operative facts; plainly a district court with jurisdiction over a substantial claim arising under federal law has jurisdiction to decide all other claims bearing such a relationship to the federal claim that "the entire action . . . comprises but one constitutional 'case.'" United Mine Workers v. Gibbs, 383 U.S.

---

**2.** The issues posed by such an arrangement will be of continuing interest if Congress enacts either of the current proposals to create a second appellate track whereby judgments of the district courts, now appealable to a court of appeals for the appropriate geographical circuit, will be taken exclusively to a newly created Court of Appeals for the Federal Circuit "in any appeal from a district court in which the jurisdiction of the district court was based, in whole or in part, on section 1338 of [title 28], except cases involving copyrights . . .

[or] on section 1346(b), except for any claim founded upon an Act of Congress or a regulation of an executive department providing for internal revenue, or on section 1346(g) of [title 28] . . . ." S. 678, 96th Cong., 1st Sess. § 324(c) (1979); see also S. 677, 96th Cong., 1st Sess. § 735(a) (1979).

**3.** In the discussion that follows, the phrase "ESA issues" is used to mean issues involving the ESA and the EPAA, as well as regulations promulgated under both statutes.

715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966); see also *Siler v. Louisville & Nashville Railroad*, 213 U.S. 175, 29 S.Ct. 451, 53 L.Ed. 753 (1909). On the other hand, the TECA "issue" approach could be broader than traditional "arising under" jurisdiction if the TECA has jurisdiction over appeals raising any ESA issue, as, for example, where the ESA issue is raised solely as a defense to a non-ESA claim; a federal question thus raised would not result in a case "arising under" federal law for purposes of district court jurisdiction. *Louisville & Nashville Railroad v. Mottley*, 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908).

Each of the three approaches implicates conflicting considerations. Limiting the TECA to traditional "arising under" jurisdiction makes applicable a well-developed body of jurisdictional law, yet scatters among the courts of appeals some ESA issues, raised by way of answer or otherwise, on which the expertise of the TECA would be helpful. Giving the TECA "case" jurisdiction assures uniform decision-making of all ESA issues, yet withdraws from the courts of appeals many non-ESA issues, which may really be the dominant issues in the case and which the TECA may have no interest and no special competence in deciding. Splitting the cases and giving the TECA only TECA "issue" jurisdiction assures uniformity of decision-making on all ESA issues and avoids burdening the TECA with non-ESA issues, yet encounters the risk of delay[4] and confusion[5] inevitably associated with a system of bifurcated appeals.

The statutory language offers clues but no firm answer. The use of the phrase "cases and controversies arising under" in § 211(b)(2) is strong evidence that Congress intended to borrow the body of decisional law that has developed under 28 U.S.C.A.

§ 1331 and other grants of jurisdiction to the district courts over cases "arising under" various regulatory statutes. See, *e. g.*, 28 U.S.C. §§ 1337, 1338, 1339, 1340. The traditional meaning associated with these words could hardly have been overlooked. This view is reinforced by language in § 211(a), the subsection conferring exclusive jurisdiction on district courts over "cases or controversies arising under" the ESA and regulations. That subsection explicitly provides that it does not affect the power of any court of competent jurisdiction, *i. e.*, a state court, to determine "any issue by way of defense" with two exceptions not here relevant. Thus, Congress, recognizing that an issue arising under the ESA could be injected into a state court case by way of defense, elected to leave such cases in the state court with federal appellate review limited to the Supreme Court, rather than to provide for removal to the district court with appellate review in the TECA. This arrangement parallels the scheme for federal question cases. It also demonstrates Congressional acceptance of the fact that not all ESA issues would be reviewed in the TECA.

Of course, Congressional willingness to leave in the *state courts* cases in which ESA defenses are raised does not inevitably indicate that *district court* cases in which such defenses are raised are not within the appellate jurisdiction of the TECA. Important federalism concerns weigh against expanding removal of state court cases, concerns which are totally absent when the only issue is which of two coordinate federal appellate courts has jurisdiction. While it would be unusual to give the phrase "arising under" a different meaning in two sections of the same statute—limited with respect to district court jurisdiction and

---

4. In a system of bifurcated appeals a stay of proceedings in one appellate court can be expected pending disposition of the appeal in the other appellate court, since success in one appeal might moot the other appeal. .

5. *See, e. g., Citronelle-Mobile Gathering, Inc. v. Gulf Oil Corp.*, 591 F.2d 711 (Temp.Emer.Ct. App.1979), *petition for cert. filed*, 47 U.S.L.W.

3700 (Apr. 24, 1979), in which the appellant filed and then withdrew notice of appeal to the TECA, pursued and prevailed on an appeal to the Fifth Circuit, which instructed the District Court to certify an appeal to the TECA, and then had the case dismissed by the TECA for lack of jurisdiction, resulting from failure to file timely notice of appeal.

broader with respect to TECA jurisdiction—such a difference could be explained by the existence of comity considerations in one context but not in the other.

Another subsection of the ESA gives some indication that Congress did not scrupulously follow the scheme associated with the "arising under" language of the federal question jurisdictional grant and was willing, in at least one instance, to give the TECA "issue" jurisdiction. Section 211(e)(2) provides that "Any party aggrieved by a declaration of a district court of the United States respecting the validity of any regulation or order issued under [the ESA]" may appeal "therefrom" to the TECA. Presumably this would permit appeal to the TECA by a district court defendant who relied on an ESA regulation as a defense and lost to a plaintiff who successfully contended that the regulation was invalid. It might also permit appeal by a plaintiff who unsuccessfully contended that an ESA regulation relied on by the defendant as a defense was invalid. In both these situations the ESA issue arises by way of defense, yet appeal apparently lies in the TECA.[6] By traditional standards, such a case is not one "arising under" the ESA. However, the very fact that Congress specifically provided for appeal to the TECA in this limited situation is some evidence that in all other circumstances traditional "arising under" jurisdiction may have been contemplated.

The legislative history provides no aid in resolving the § 211(b)(2) issue posed in this case. The Senate Report identifies as among the goals of a system of judicial review "speed and consistency of decisions in cases arising under the Act . . . ." S.Rep. No. 92–507, 92d Cong., 1st Sess. 10, reprinted in [1971] U.S.Code Cong. & Admin.News, pp. 2283, 2292. "Consistency of decisions" will be aided by construing

§ 211(b)(2) to provide for TECA "issue" jurisdiction. "Speed" will more likely be promoted either by limiting the TECA to traditional "arising under" jurisdiction or giving it TECA "case" jurisdiction, thereby avoiding the delays likely to occur with bifurcated appeals.

The case law has implicitly charted a course that points toward according the TECA some form of "issue" jurisdiction under a system of bifurcated appeals. The TECA has indicated that its jurisdiction is not limited by the principles that govern traditional "arising under" jurisdiction as that phrase applies to the federal question jurisdiction of the district courts. The TECA has declined to apply to its jurisdiction the limiting rule of *Louisville & Nashville Railroad v. Mottley, supra,* that federal question jurisdiction cannot be created by federal defenses, noting that "*Mottley* was handed down in 1911 [sic] under a completely different background and context." *Citronelle-Mobile Gathering, Inc. v. Gulf Oil Corp.,* 591 F.2d 711, 715 (Temp.Emer.Ct. App.1979), *petition for cert. filed,* 47 U.S. L.W. 3700 (Apr. 24, 1979). The TECA accordingly ruled that it had exclusive jurisdiction over a controversy in which a counterclaim arose under the EPAA and was "so closely related to [plaintiff's] complaint that the resolution of the litigation in its entirety requires application and interpretation of the EPAA . . . ." *Id.* at 716. The TECA's explicit disavowal of the *Mottley* limitation makes clear that the TECA was not relying on the rule, applicable in the federal question context, that the existence of a counterclaim independently invoking federal jurisdiction is sufficient for a district court's jurisdiction over the counterclaim notwithstanding the absence of jurisdiction over the complaint. See, *e. g., Byrnes v. Faulkner, Dawkins & Sullivan,* 362 F.Supp. 864, 868–70 (S.D.N.Y.1973)

---

**6.** It is simply not clear from the language of § 211(e)(2) whether in these circumstances the appeal brings up the entire case or only the declaration respecting the validity of the regulation or order. *Cf.* § 211(c), which authorizes a district court to certify to the TECA a substantial constitutional issue in any action commenced under the ESA, and which authorizes the TECA to make a determination that the entire action be sent to it for consideration. *See, e. g., Condor Operating Co. v. Sawhill,* 514 F.2d 351 (Temp.Emer.Ct.App.), *cert. denied,* 421 U.S. 976, 95 S.Ct. 1975, 44 L.Ed.2d 467 (1975).

(Gurfein, J.), *aff'd*, 550 F.2d 1303 (2d Cir. 1977). See also *Mountain Fuel Supply Co. v. Johnson*, 586 F.2d 1375 (10th Cir. 1978), *cert. denied*, —— U.S. ——, 99 S.Ct. 2182, 60 L.Ed.2d 1058 (1979); and *Sohio Petroleum Co. v. Caribou Four Corners, Inc.*, 573 F.2d 1259 (Temp.Emer.Ct.App.1978), both upholding TECA jurisdiction over ESA counterclaims.

Moreover, the TECA has further departed from the concept of traditional "arising under" jurisdiction by disclaiming jurisdiction over all non-ESA claims in cases where the complaint contained at least one ESA claim. *Spinetti v. Atlantic Richfield Co.*, 522 F.2d 1401 (Temp.Emer.Ct.App.1975); *United States v. Cooper*, 482 F.2d 1393 (Temp.Emer.Ct.App.1973); see also *Associated General Contractors of America, Inc., Oklahoma Chapter-Builder's Division v. Laborers International Union Local 612*, 489 F.2d 749 (Temp.Emer.Ct.App.1973). It is clear from *Spinetti* and *Cooper* that the TECA concludes it lacks jurisdiction over non-ESA claims, not simply that as a matter of discretion it declines to exercise an available pendent jurisdiction. *Cf. United Mine Workers v. Gibbs, supra.*

■ Perhaps the clearest indication that the TECA and other courts of appeals regard the TECA's jurisdiction as some form of "issue" jurisdiction is the development of a system of bifurcated appeals from unitary judgments. In *Municipal Electric Utility Association v. Federal Power Commission*, 158 U.S.App.D.C. 188, 485 F.2d 967 (1973), an FPC order was challenged on several grounds, including an alleged violation of regulations promulgated pursuant to the ESA. The District of Columbia Circuit disclaimed jurisdiction to consider the ESA issue, but proceeded nevertheless to adjudicate the non-ESA issues.[7] Similarly, in an appeal from a judgment dismissing both an ESA claim and a non-ESA claim, this Court has severed and dismissed the portion of the appeal concerned with the ESA issue, while adjudicating the balance of the appeal, which concerned the non-ESA issue. *Whelan v. Brinegar*, 538 F.2d 924 (2d Cir. 1976); see also *M. Spiegel & Sons Oil Corp. v. B. P. Oil Corp.*, 531 F.2d 669, 670 (2d Cir. 1976) (appeal from grant of preliminary injunction grounded on EPAA dismissed where "there remain no substantive issues subject for review by this court that are independent and severable from those reserved for consideration solely by the TECA."). And in *Associated General Contractors of America, Inc., Oklahoma Chapter-Builder's Division v. Laborers International Union, Local 612*, 476 F.2d 1388 (Temp.Emer.Ct.App. 1973), the TECA exercised jurisdiction over an appeal from part of a judgment with respect to an ESA issue, while the Tenth Circuit was exercising jurisdiction over an appeal from other aspects of the same judgment, *Gordon v. Laborers' International Union*, 490 F.2d 133 (10th Cir. 1973), *cert. denied*, 419 U.S. 836, 95 S.Ct. 63, 42 L.Ed.2d 62 (1974). As the TECA put it in another case in which only a portion of an appeal was adjudicated, "For purposes of this appeal we need say only that this court has jurisdiction over only Economic Stabilization Act issues." *City of Groton v. Federal Power Commission*, 487 F.2d 927, 936 (Temp.Emer.Ct.App.1973). Thus, almost without exception,[8] both the TECA and the courts of appeals have construed § 211(b)(2) to create some form of "issue" jurisdiction

---

7. The ESA issue was not immediately appealable to the TECA, since that Court does not have direct appellate review jurisdiction over orders of the FPC. The route for judicial review leads initially to the district court under § 211(a), *see Municipal Intervenors Group v. Federal Power Commission*, 153 U.S.App.D.C. 373, 379, 473 F.2d 84, 90 (1972), and thence to the TECA under § 211(b)(2), *see Baldwin County Electric Membership Corp. v. Price Commission*, 481 F.2d 920 (Temp.Emer.Ct.App.), *cert. denied*, 414 U.S. 909, 94 S.Ct. 230, 38 L.Ed.2d 147 (1973).

8. The Seventh Circuit has explicitly construed § 211(b)(2) in a manner "consistent with interpretations of the same phrase, 'arising under,' in the context of federal-question jurisdiction in the federal courts." *St. Mary's Hospital, Inc. v. Ogilvie*, 496 F.2d 1324, 1326 (7th Cir. 1974). In *St. Mary's Hospital*, the plaintiff sought a preliminary injunction on non-ESA grounds, and the defendant interposed an ESA counterclaim. The District Court granted the preliminary injunction prior to any adjudication of the counterclaim, and defendant appealed. The Seventh Circuit declined to dismiss the appeal in

in the TECA, rather than traditional "arising under" jurisdiction.

It must be candidly recognized that according the TECA some form of "issue" jurisdiction places on the phrase, "cases and controversies arising under," as used in § 211(b)(2), a construction that differs from the meaning associated with these words in other jurisdictional statutes, and differs even from the grant of jurisdiction to the district courts in § 211(a). The distinction reflects two considerations. First, as previously noted, the narrow view of "arising under" for purposes of defining the federal question jurisdiction of the district courts was formulated in the context of allocating judicial authority between federal and state courts. In the absence of comity considerations, no considerations of similar weight counsel against routing to the TECA appeals from judgments that depend on adjudication of an ESA issue, even though that issue was raised in the district court by way of defense or otherwise.

■ Second, considerations that apply to the definition of a federal trial court's jurisdiction are not necessarily valid in determination of the appellate jurisdiction of a federal court. For example, though the pleading of a substantial federal question can confer whole case jurisdiction on a district court, the appellate jurisdiction of the Supreme Court to review state court judgments involving federal questions has not been similarly interpreted. *Murdock v. City of Memphis*, 20 Wall. (87 U.S.) 590, 22 L.Ed. 429 (1875). Moreover, determination of an appropriate court for appellate jurisdiction occurs at a stage when the nature of the controversy is more refined than at the pleading stage, when trial court jurisdiction is normally assessed. Whatever the hazards might be in forecasting whether a federal question will really be in controversy when pleaded in an answer, no similar risks are encountered in routing to a specialized federal appellate court all issues within its special competence that have actually been adjudicated in a district court. And while duplication in costs and time of parallel trials would be frequently experienced if federal trial courts were prevented from adjudicating state claims closely related to federal claims, no similar problem is created by somewhat limiting TECA's jurisdiction only to ESA issues, leaving other matters for review in the courts of appeals.

■ We believe that according the TECA some form of "issue" jurisdiction is a sound interpretation of § 211(b)(2) and is in fact the interpretation that has implicitly guided the jurisdictional decisions of both the courts of appeals and the TECA. This approach maximizes the use of the special expertise of the TECA on ESA issues, see *Bray v. United States*, 423 U.S. 73, 74, 96 S.Ct. 307, 46 L.Ed.2d 215 (1975), and recognizes the authority of the TECA to relinquish jurisdiction over the remaining issues in any appeal once it has reviewed the district court's adjudication of an ESA issue. While this course will encounter some delays and uncertainties because of the bifurcated nature of some appeals, we believe those problems are manageable.[9] In any event, such problems are not sufficient to justify depriving the TECA of the opportunity to maximize its resolution of ESA issues, an opportunity that would be impaired if the TECA were limited to traditional "arising under" jurisdiction.

■ There remains for consideration some further indication of the contours of the TECA's "issue" jurisdiction. The Congressional purpose in creating the TECA would not be served by routing to that

favor of TECA jurisdiction, ruling that whether the case arose under the ESA was to be determined solely from the complaint. While the rationale of the decision is traditional "arising under" jurisdiction, the result is entirely consistent with the adjudicated "issue" approach of all the other cases discussed above. The District Court had adjudicated only a non-ESA issue; hence it was appropriate for a court of appeals, rather than the TECA, to exercise jurisdiction over an appeal from that ruling.

**9.** Uncertainty and the risk of appealing to the wrong court can be avoided by filing two notices of appeal, one in the district court to appeal to the court of appeals, Fed.R.App.P. 3(a), and one in the TECA to appeal to that Court, Gen.R.T.E.C.A. 15(a). Some delays will be inevitable, but the grant of a stay in either the court of appeals or the TECA can at least avoid what might otherwise be unnecessary appellate proceedings.

Court appeals from judgments in all cases where an ESA issue was merely raised, even if the issue was sufficiently pleaded in a complaint to satisfy traditional "arising under" standards. For example, if the complaint seeks a single recovery on both ESA grounds and non-ESA grounds, and judgment is entered for the plaintiff on the non-ESA grounds, there is no point in burdening the TECA with the appeal from that judgment. Similarly, where a defendant asserts both an ESA defense and a non-ESA defense, appeal from a judgment in his favor resting solely on the non-ESA defense should not be imposed on the TECA. What is determinative, as the cases have implicitly recognized, is not the existence of an ESA issue, but whether the ESA issue has been adjudicated.[10]

We therefore conclude that "cases and controversies arising under" the ESA, as used in § 211(b)(2), means adjudications by a district court of an "ESA issue." In the pending appeal, the District Court has ruled that a motion to vacate judgment should be denied. The judgment sought to be vacated was obtained on a claim that did not arise under the ESA or the EPAA. Nevertheless, in denying the motion to vacate and for related relief, the District Court clearly adjudicated an "ESA issue," whether Coastal's sales violated the EPAA. Indeed, this was the only issue adjudicated.

Jurisdiction of the appeal therefore rests with the TECA. The appeal in this Court is dismissed for lack of jurisdiction,[11] and lacking jurisdiction over the appeal, we deny the motion to transfer.[12]

Judge BONSAL, being a member of the TECA and not wishing to comment on matters beyond the precise holding of this case that might come before the TECA, concurs in the result.

---

**10.** We note, but do not resolve, the problem that might be posed by a district court adjudication in favor of a defendant that is alternatively rested on both ESA and non-ESA grounds. If appeals are noticed to both a court of appeals and the TECA, the choice of an appropriate initial appellate route might be influenced by a determination of whether appellate resolution of ESA issues is to be encouraged in the interests of promoting certainty concerning a complex regulatory scheme, or discouraged in the manner that resolution of constitutional issues is disfavored if non-constitutional grounds are available. The former approach suggests initial consideration by the TECA, with the court of appeals staying its appeal to await the TECA determination of the ESA issue. The latter approach suggests a stay of the TECA appeal, pending court of appeals resolution of the non-ESA issue.

**11.** Dismissal could, in some circumstances, deprive an appellee of a basis for defending the judgment or order appealed from on some ground other than the ESA issue adjudicated by a district court. But the opportunity is at worst deferred, rather than lost. If the TECA disagrees with the ruling of the District Court concerning the EPAA issue adjudicated in this case, it will presumably remand to the District Court for further proceedings. Coastal will then be entitled to urge the District Court that the motion to vacate should still be denied on any other grounds available, and if the motion is again denied, without adjudication of an ESA issue, review in this Court will be available.

**12.** Since a notice of appeal has been filed with the TECA, jurisdiction over this appeal has been effectively vested in the TECA, without the necessity of an order transferring the appeal from this Court. Dismissal of the appeal in this Court clears the way for dissolution of the stay in the TECA and the exercise of that Court's appellate jurisdiction.