**UNITED STATES of America, and June Wallach, Acting Area Manager, Economic Regulatory Administration, Department of Energy, Appellees,**

v.

**Al WICKLAND, Individually and as President of Wickland Oil Company, Appellant.**

**No. 9–45.**

Temporary Emergency Court of Appeals.

April 18, 1980.

---

William W. Scott, Michael D. Sherman, John B. Williams, Collier, Shannon, Rill, Edwards & Scott, Washington, D. C., and John V. Diepenbrock, Diepenbrock, Wulff, Plant & Hannegan, Sacramento, Cal., were on the brief for appellant.

Herman Sillas, U. S. Atty., and Francis M. Goldsberry II, Asst. U. S. Atty., Sacramento, Cal., with Ginger Lew, Regional Counsel, and James S. Williams and Nicholas Koumjian, U. S. Dept. of Energy, San Francisco, of counsel, were on the briefs for appellees.

Thomas H. Kemp, Dept. of Energy, Washington, D. C., for appellees.

Before JAMESON, DUNIWAY, and ZIRPOLI, Judges.

JAMESON, Judge:

Wickland Oil Company is a marketer of petroleum products, selling diesel fuel and gasoline at both the wholesale and retail levels. Most retail sales of gasoline are made through the company's wholly owned "Regal" stations. In connection with a pricing audit of Wickland Oil Company, the Federal Energy Administration[1] on August 8, 1977 served appellant, Al Wickland, individually and as president of Wickland Oil Company, with a subpoena to produce certain books, records, and pricing information. Wickland did not comply, but sought to quash or modify the subpoena pursuant to the administrative remedy provided in 10 C.F.R. § 205.8(h).[2]

Wickland was unsuccessful in quashing or modifying the subpoena at the administrative level. On March 14, 1978, Wickland complied with the subpoena as it related to wholesale diesel and gasoline sales, but continued to refuse to produce the subpoenaed materials relating to the Regal stations, claiming that the DOE was equitably es-

---

1. The duties and responsibilities of the Federal Energy Administration were assumed by the Economic Regulatory Administration of the Department of Energy (DOE) on October 1, 1977, pursuant to the Department of Energy Organization Act, Pub.L. No. 95–91 (Aug. 4, 1977), 42 U.S.C. § 7151.

2. The DOE is now charged with the enforcement of the Mandatory Petroleum Price Regulations, which govern the maximum prices that petroleum marketers are permitted to charge for certain products. The substantive price regulations appear in 10 C.F.R. Part 212, and the administrative and procedural regulations, including those dealing with subpoenas, in Part 205. The regulations were promulgated pursuant to the Economic Stabilization Act of 1970, (ESA) 12 U.S.C. § 1904 note, and the Emergency Petroleum Allocation Act of 1973, (EPAA) 15 U.S.C. § 751, et seq.

topped from continuing its investigation into the operations of the Regal stations.[3]

On April 21, 1978, pursuant to a petition to enforce the subpoena filed by appellees in the District Court of the Eastern District of California, the court ordered Wickland to appear and show cause why he should not be compelled to produce the subpoenaed records. Following briefs and oral argument, the court on December 5, 1978 entered findings of fact and conclusions of law, holding the subpoena valid and rejecting each of Wickland's contentions.[4] By order entered on the same date appellant was required to comply in full with the subpoena theretofore served upon him. Judgment for appellees was entered on January 4, 1979.

On January 4, 1979, appellant filed a notice of appeal to the United States Court of Appeals for the Ninth Circuit. On July 19, 1979, appellees filed a motion to dismiss the appeal on the ground that the circuit court lacked subject matter jurisdiction and that the Temporary Emergency Court of Appeals had exclusive appellate jurisdiction.

On November 16, 1979, the Ninth Circuit Court of Appeals entered an order (1) granting appellees' motion to dismiss because the Temporary Emergency Court of Appeals has exclusive jurisdiction over the appeal under 15 U.S.C. § 754(a)(1); (2) transferring the appeal to this court; and (3) providing that if this court declines to accept jurisdiction, the appeal shall be dismissed without further order of the Ninth Circuit Court of Appeals.

On November 23, 1979 the record on appeal was filed in this court. On November 29, 1979, appellant filed a petition for rehearing in the Ninth Circuit Court of Appeals. That motion was denied on January 17, 1980.

On February 15, 1980, appellant filed a motion in this court for a determination that the United States Court of Appeals for the Ninth Circuit has exclusive jurisdiction over this appeal, or that, in the alternative, this court accept the appeal by deeming January 4, 1979 (the date notice of appeal to the Ninth Circuit was filed in the district court) as the date of appeal to this court. On March 5, 1980, appellee filed a motion to dismiss the appeal for lack of jurisdiction as a result of appellant's failure to file a timely notice of appeal in this court.

Two questions are presented: (1) whether this court has exclusive jurisdiction of an appeal from an order requiring compliance with a subpoena issued by the FEA; and (2) if so, whether this court lacks jurisdiction because the appeal was not timely filed.

## I. Jurisdiction of Appeal of Order Requiring Compliance with Subpoena

■ Section 211(b)(2) of the Economic Stabilization Act (ESA) provides:

"Except as otherwise provided in this section, the Temporary Emergency Court of Appeals shall have exclusive jurisdiction of all appeals from the district courts of the United States in cases and controversies arising under this title or under regulations or orders issued thereunder. Such appeals shall be taken by the filing of a notice of appeal with the Temporary Emergency Court of Appeals within thirty days of the entry of judgment by the district court.

Section 206 of the ESA provides that an agency exercising authority under the Act "shall have authority, for any purpose related to this title, to sign and issue subpoenas for the attendance and testimony of witnesses and the production of relevant" documents.

Under Section 5 of the Emergency Petroleum Allocation Act of 1973 (EPAA), 15

---

3. Wickland contended that the DOE was estopped from proceeding with the Regal investigation because it allowed Wickland to undertake and complete a price reduction in the amount of $21,000 to customers at its Regal stations based upon Wickland's belief that the completion of this refund would settle the Regal portion of the DOE investigation.

4. In addition to his primary contention that the DOE was estopped from its investigation of the Regal station operations, appellant questioned the propriety of the subpoena on three other grounds.

U.S.C. § 754(a)(1), sections 206 and 211 of the ESA are made applicable "to any action taken by the President (or his delegate) under this Act". The issue accordingly is whether this appeal involves a case or controversy arising under the ESA and the EPAA within the meaning of § 211(b)(2) of the ESA. If so, this court has exclusive jurisdiction of the appeal.

This court has exercised jurisdiction in a number of cases over appeals of orders involving the enforcement of FEA or DOE subpoenas. See, e. g., *United States v. Bell,* 564 F.2d 953 (Em.App.1977); *United States v. Empire Gas Corp.,* 547 F.2d 1147 (Em. App.1976), *cert. denied,* 429 U.S. 1122, 97 S.Ct. 1158, 51 L.Ed.2d 572 (1977); and *United States v. Southwest Nat. Bank,* 598 F.2d 600 (Em.App.1979).

In contending that the jurisdiction of this appeal is properly in the Ninth Circuit, appellant relies primarily on *Coastal States Marketing, Inc. v. New England Petroleum Corp.,* 604 F.2d 179 (2 Cir. 1979). We cannot agree that *Coastal States* supports appellant's position. In that case the court concluded "that 'cases and controversies arising under' the ESA, as used in § 211(b)(2), means adjudications by a district court of an 'ESA issue'." *Id.* at 187. The court defined "ESA issues" as "issues involving the ESA and the EPAA, as well as regulations promulgated under both statutes". *Id.* at 182, n. 3. The court did not believe, however, that the Temporary Emergency Court of Appeals should be burdened when one of the parties raises an ESA issue, but judgment is entered on a non-ESA ground. "What is determinative . . . is not the existence of an ESA issue, but whether the ESA issue has been adjudicated." *Id.* at 187.[5]

Here the issue is whether the DOE can be estopped from enforcing the subpoena power granted it by the EPAA. In our opinion this is an issue "involving the . . . EPAA". Through the subpoena the DOE is seeking information to determine whether there has been a violation of the ESA and the EPAA and regulations issued pursuant thereto. It involves a federal agency's attempt to fulfill its duty under statutes and regulations over which this court has exclusive jurisdiction. The district court has "adjudicated" an "EPAA issue".

Appellant next argues that this case presents only "general legal issues" of estoppel and subpoena enforcement which the court of appeals can confront without addressing ESA or EPAA questions. He maintains that the Supreme Court has admonished the courts to "not become involved in the intricate aspects of the regulatory activity", citing *Oklahoma Press Pub. Co. v. Walling,* 327 U.S. 186, 66 S.Ct. 494, 90 L.Ed. 614 (1946) and *United States v. Morton Salt Co.,* 338 U.S. 632, 70 S.Ct. 357, 94 L.Ed. 401 (1950).

This admonition in *Oklahoma Press* must be viewed in the context in which it was made. The petitioners, in resisting a subpoena duces tecum, maintained that the Fair Labor Standards Act was not applicable to them "for constitutional and other reasons". In affirming an order enforcing the subpoena, the Court held that the agency, rather than the courts, should in the first instance determine the question of coverage in a preliminary investigation into possible violations. *Id.* at 214, 66 S.Ct. at 508. As Mr. Justice Clark stated in *American Intern. Trading Co. v. Bagley,* 536 F.2d 1196, 1198 (7 Cir. 1976), "It will be soon enough on direct appeal from agency action to determine the question of power."[6] And

5. *Coastal States* had brought an action for money allegedly owed by the defendant for fuel oil purchased by the defendant. The defendant claimed in its answer that *Coastal States* had overcharged defendant in violation of the EPAA. That "was the only issue adjudicated". The court accordingly held that jurisdiction rested with the Temporary Emergency Court of Appeals and dismissed the appeal.

6. After citing a case where a subpoena duces tecum was enforced, holding defenses alleged were premature, Justice Clark continued: "This eliminates the problem of delays which is of the essence in agency administration. If there be a legitimate purpose to which the investigation is pertinent, if the agency does not have the information sought and the formal administrative steps provided in its creative Act have been followed, then courts should not

in *F.T.C. v. Gibson*, 460 F.2d 605, 608 (5th Cir. 1972), the court noted that under the rule of *Oklahoma Press*, "appellants may not litigate the jurisdictional issue as a defense in a subpoena enforcement proceeding."

In other words, *Oklahoma Press* and its progeny simply hold that in subpoena enforcement proceedings the courts should not entertain challenges to the subpoena *power* based on jurisdictional questions such as the constitutionality or coverage of regulatory legislation. They do not, as appellant contends, prohibit courts from examining issues relevant to the "regulatory activity". This case does not involve, as in *Oklahoma Press*, the question of the constitutionality or validity of the Act under which the subpoena was issued. The subpoena here was clearly issued pursuant to a provision of the ESA. The estoppel defense asserted by appellant involved the effect of a price reduction order entered by the DOE. Any "general questions of administrative law" are clearly interwoven with provisions of the ESA and EPAA and invoke policy questions directly affecting the EPAA and its enforcement. The district court has adjudicated an issue involving the validity and propriety of the subpoena. We agree with the Ninth Circuit that this court has exclusive jurisdiction of the appeal from that order.

## II. *Was Notice of Appeal Timely Filed in this Court?*

■ As set forth above, § 211(b)(2) of the ESA provides that "appeals shall be taken by filing notice of appeal with the Temporary Emergency Court of Appeals within thirty days of the entry of judgment by the district court". Rule 15(a)(1) of the TECA likewise provides that notice of appeal in any civil or criminal case "shall be filed with the clerk of this court within 30 days of the entry of judgment by the district court. This time limitation shall be binding upon both government appeals and private appeals. . . ."

intervene in the initial determinations; they are for the agency to decide at this stage of the

In *United States v. Cooper*, 482 F.2d 1393, 1400 (Em.App.1973), this court held that it was without jurisdiction where the appellant failed to file an appeal with the clerk of the TECA within 30 days of judgment, as required by § 211(b)(2) of the Stabilization Act and Rule 15(a) of the TECA. In *Cooper*, the appellant had filed with the district court a notice of appeal to the United States Court of Appeals for the Ninth Circuit. More than 30 days after the entry of judgment, the Ninth Circuit dismissed the appeal and transferred it to the TECA. This court held that since "no proper appeal has been taken to this court, and since even if the Ninth Circuit's transfer order is treated as a notice of appeal, it was untimely, the appeal from the counts based on the Stabilization Act is dismissed." *Cooper* was followed in *Citronelle-Mobile v. Gulf Oil Corp.*, 591 F.2d 711 (Em.App.), *cert. denied*, 444 U.S. 879, 100 S.Ct. 168, 62 L.Ed.2d 109 (1979), where the court said in part: "As this court noted in *Cooper, supra*, at 1400, the filing of a timely notice of appeal is mandatory and jurisdictional." *Id.* at 716. As in *Cooper*, the appellant here failed to file a notice of appeal with this court, but instead improperly filed in the district court a notice of appeal to the Ninth Circuit. The appeal was dismissed for lack of jurisdiction after the 30 days for filing with this court had expired. Eleven months had elapsed between the entry of judgment by the district court and the order of transfer to this court.

Appellant argues that his failure to file a timely notice of appeal should be excused under the "unique circumstances" exception recognized in *Harris Truck Lines v. Cherry Meat Packers*, 371 U.S. 215, 83 S.Ct. 283, 9 L.Ed.2d 261 (1962), and *Thompson v. I.N.S.*, 375 U.S. 384, 84 S.Ct. 397, 11 L.Ed.2d 404 (1964). In response to a similar contention in *Cooper*, this court said:

The basic holding in these cases is that, if at a time when a party might take a timely appeal, he receives assurances from the district court that he need not

inquiry." See also *New Orleans Public Service, Inc. v. Brown*, 507 F.2d 160 (5 Cir. 1975).

appeal [*Thompson*], or that time for appeal is extended [*Harris*], then he should not lose his right to appeal where the district court was in fact mistaken. But in our case the appellant Cooper was in no way misinformed or misled by the district court. Thus the cases above are inapposite.

*Id.* at 1399–1400. The same is true here. There is no contention that appellant was misled or that he received any assurance that the time for appeal was extended. Appellant contends, however, that the scope of this court's jurisdiction was "not clearly defined". As set forth in Part I, we cannot agree with this contention. Moreover, as this court stated in *Reed v. Kroger*, 478 F.2d 1268, 1271–72, (Em.App.1973):

> We strongly believe that professional standards require counsel to be familiar with, or to make at least a reasonable effort to learn, the rules of the courts in which they practice. The rules of this court are published (citations omitted) . . . and the court has circulated copies of its rules to the clerks of all federal courts. We are unable to conclude that counsel's failure to acquaint himself with the basic requirements for the filing of his client's notice of appeal can properly be described as constituting "unique circumstances" or "all that could reasonably be expected".[7]

*Cooper* and *Citronelle-Mobile* are controlling. The appeal is dismissed.[8]

---

7. Moreover, as the court suggested in *Coastal State Marketing, supra,* "uncertainty and risk of appealing to the wrong court can be avoided by filing two notices of appeal, one in the district court to the court of appeals . . . and one in the TECA to appeal to that court." 604 F.2d at 186, n. 9.

8. In *Cooper* we "gratuitously" stated that although we dismissed the appeal, we had, nevertheless, reviewed defendant's contentions and had the appeal been properly taken, we would have held the contentions without merit. The same is true in this case.