646 F.2d 946
 UNITED STATES of America, Plaintiff-Appellant,
v.
UNI OIL, INC., Thomas M. "Mick" Hajecate, Thomas H. "Tom"
Hajecate, James E. Fisher, Charles R. Akin,
Charles Goss and Ball Marketing
Enterprise, Defendants-Appellees.
UNITED STATES of America, Plaintiff-Appellant,
v.
MID-ATLANTIC PETROLEUM COMPANY, LTD., et al., Defendants-Appellees.
 Nos. 79-2488, 79-3082.
 United States Court of Appeals,
Fifth Circuit.
 May 19, 1981.
As Modified on Denial of Rehearings and Rehearings En Banc
Sept. 4, 1981.
 
 J. A. Tony Canales, U. S. Atty., James R. Gough, Asst. U. S. Atty., Houston, Tex., Richard A. Sauber, Sp. Atty., Washington, D. C., for the U. S.
 Charles N. Wooten, Sr., Charles Brandt, Lafayette, La., Thano Dameris, Houston, Tex., for Uni Oil, Hajecate, Hajecate, Akin, Goss and Ball Marketing.
 Dan Ryan, Houston, Tex., for Fisher.
 Vincent J. Fuller, Judith A. Miller, Scott Blake Harris, Washington, D. C., Edward B. McDonough, Jr., Houston, Tex., Robert L. Weinberg, Washington, D. C., for Crude Co. and Masek.
 Appeals from the United States District Court for the Southern District of Texas.
 Before HILL, RUBIN and ANDERSON, Circuit Judges.
 JAMES C. HILL, Circuit Judge:
 
 
 1
 Under regulations adopted by the Department of Energy, see 10 C.F.R. §§ 212.1 -212.188 (1980),[1] vendors of domestic crude oil operate subject to various price controls. This appeal is a consolidation of two cases in which appellee oil dealers were indicted for various fraudulent schemes and practices which allegedly enabled them to sell domestic crude oil for prices in excess of legal maxima.[2] See 10 C.F.R. § 212.131 (1980).
 
 
 2
 Although the indictments exclusively charge Title 18 offenses, both the indictments and the defenses thereto make use of the Emergency Petroleum Allocation Act (EPAA) 15 U.S.C. § 751 et seq. and its regulations. The tension between Title 18 and the EPAA poses difficult questions regarding our jurisdiction and the sufficiency of the indictments. The district court dismissed both indictments. For the reasons set out below, we conclude that we have jurisdiction to consider this appeal and that both indictments are sufficient. Therefore, we reverse and remand to the district court.
 
 I. The Indictments
 
 3
 On March 7, 1979 a grand jury in Houston, Texas returned an eighty-four count indictment against Uni Oil, Ball Marketing Enterprise and five named individual defendants, Thomas "Mick" Hajecate, Thomas "Tom" Hajecate, James Fisher, Charles Akin, and Charlie Goss. United States v. Uni Oil, Inc., No. 79-2488 (hereinafter Uni Oil ). The indictment charged that the defendants conspired to violate the Racketeer Influenced and Corrupt Organizations (RICO) statute in order to miscertify and sell oil that was properly considered "old" oil as "new" oil, 18 U.S.C. § 1962(d) (Count 1), conducted the affairs of an enterprise, Uni Oil, through a pattern of racketeering activity which included mail fraud and commercial bribery, 18 U.S.C. § 1962(c) (Count 2), furthered a scheme and artifice to defraud the United States and its agencies through mailings which fraudulently certified "old" oil as "new" oil, 18 U.S.C. § 1341 (Counts 3-34), engaged in wire fraud to further the same scheme and artifice, 18 U.S.C. § 1343 (Counts 35-59), and made false and fraudulent representations regarding the origin of oil in records caused to be prepared and submitted pursuant to government regulation. 18 U.S.C. § 1001 (Counts 60-84).
 
 
 4
 The appellees challenged the indictment on numerous grounds. After extensive briefing, a hearing was held before the Honorable Ross N. Sterling of the United States District Court for the Southern District of Texas on May 29, 1979. At the close of argument, Judge Sterling announced that the appellees' motions to dismiss were granted. One week later the judge issued a one sentence order dismissing the indictment. Despite the complexity of the issues, the order was not accompanied by a memorandum or by any other analysis by the district judge.
 
 
 5
 On April 30, 1979 a grand jury in Houston, Texas returned a twenty-nine count indictment against the Mid-Atlantic Petroleum Company, Ltd., The Crude Company, Uni Oil, Inc., H.C. Iran, Ltd. and five named individuals, John Allen Masek, Thomas "Tom" Hajecate, Thomas "Mick" Hajecate, Charles R. Akin, and R. Stanley Corbitt. United States v. Mid Atlantic Petroleum Co., Ltd., No. 79-3082 (hereinafter Mapco). The indictment charged that the defendants conspired to conduct the affairs of an enterprise, Uni Oil, through a pattern of racketeering activity in order to disguise oil that was properly to be considered "old" oil as "new" oil, 18 U.S.C. § 1962(d) (Count 1), conducted the affairs of Uni Oil through a pattern of racketeering activity, 18 U.S.C. § 1962(c) (Count 2), caused false and fraudulent invoices and certificates to be placed in the mail 18 U.S.C. § 1341 (Counts 3-23), and knowingly made false and fraudulent representations in a matter within the jurisdiction of the Federal Energy Administration, i. e., falsely certifying domestic crude oil, 18 U.S.C. § 1001 (Counts 24-29).
 
 
 6
 As in Uni Oil, the appellees challenged the indictment on numerous grounds. After extensive briefing, oral argument was held before the Honorable Ross N. Sterling of the United States District Court for the Southern District of Texas. From the bench, Judge Sterling ordered dismissal of the indictment for "the reasons stated in the Defendants' briefs." On July 25, 1979, Judge Sterling issued a written order granting the motions to dismiss "for the reasons set out in the Defendants' briefs."
 
 II. Discussion
 A. Jurisdiction
 
 7
 The threshold question is whether we have jurisdiction to consider this appeal. Section 211(b)(2) of the Economic Stabilization Act of 1970 provides that the Temporary Emergency Court of Appeals shall have "exclusive jurisdiction of all appeals from the district courts of the United States in cases and controversies arising under this title or under regulations or orders issued thereunder." 12 U.S.C. § 1904 note (West Supp.1977). Section 5(a)(1) of the Emergency Petroleum Allocation Act, as amended, 15 U.S.C. § 754, incorporates and carries forward this grant of special jurisdiction. Accordingly, if the district court adjudicated an EPAA issue we lack jurisdiction. Coastal States Marketing, Inc. v. New England Petroleum Corp., 604 F.2d 179, 187 (2d Cir. 1979).
 
 
 8
 We begin by noting that an EPAA issue is not raised simply because the indictments "included an explanation of the EPAA regulations proscribing miscertification and that such regulations provided a convenient format for defendants' (alleged) scheme of fraud and criminal enterprise," United States v. Zang, 645 F.2d 999 at 1003 (Em.App. 1981). However, the thrust of appellees' argument is not that the indictment arose under the EPAA. Rather, they contend that two EPAA issues were raised in defense to the indictment. See Coastal States Marketing, Inc. v. New England Petroleum Corp., 604 F.2d 179 (2d Cir. 1979). First, they argue that the EPAA regulations "upon which the charges were predicated" are unconstitutionally vague. Second, they argue that the EPAA preempted certain Title 18 provisions as they might have otherwise applied to the allegations in the indictment. See Post Argument Brief of Appellees The Crude Company and Masek at 2. Appellees urge that the above issues require a constitutional construction of the EPAA; hence, both the letter and spirit of § 211(b)(2) are served by transferring this case to TECA. See United States v. Wickland, 619 F.2d 75 (Em.App.1980). Appellees excellent briefs present a forceful argument. Nonetheless, a close examination of the character of the issues presented reveals that none of them arise under the EPAA.
 
 B. Jurisdiction and Vagueness
 
 9
 An analysis of the appellees' defenses can not be conducted without reference to the indictments. Considering the indictments themselves, not the ones the defendants seek for us to imagine in their stead, there is no charge of a violation of EPAA regulations. The crimes charged vary with each count, but Count 3 of No. 79-2488 will serve as an example. The issue under Count 3 is whether Invoice $ 147, mailed to Mid-Atlantic Petroleum Company from one of the co-defendants, Uni Oil, on July 22, 1976, contained untrue representations, made knowingly and with intent to defraud, as part of the scheme alleged in the indictment. In the absence of the existence of the EPA or of any EPAA regulations, it would presumably be a criminal act to use the mails as part of a scheme to defraud by falsely certifying facts relating to the provenance of oil knowingly and with intent to defraud. What makes the act criminal is not the regulation, but the use of the mails to carry an untrue document fabricated with fraudulent purpose.
 
 
 10
 If the description of "old" and "new" oil, wherever set forth, whether in regulations or technical literature, is so vague that no one can tell one from the other (or if, as put by the defendants, they do not provide "fair notice" of that difference between "old" and "new" oil), evidence to that effect and the arguments of counsel might persuade a jury that the defendants did not knowingly make a false statement or lacked intent to defraud or otherwise did not violate the statute upon which the indictment is based. On appeal, the defendants phrase this issue as "whether the regulations are unconstitutionally vague." Thus, they assert, the constitutionality of the regulations is at issue and only TECA has jurisdiction.
 
 
 11
 This contention is subtly different from their contention in the district court. Below they contended that "FEA's Crude Oil Certification Regulations Cannot be the Basis for Criminal Prosecution Unless they Provided 'Fair Notice' of What Conduct was Required." "Because of this lack of fair notice, the Due Process Clause prohibits criminal prosecution of the defendants for violating the certification regulations." This was not an attack on constitutionality of the regulations per se but on the constitutionality of prosecuting a person for conduct that was made criminal without fair notice. That issue does not require resolution of the constitutionality or even the interpretation of the regulations; only whether the criminal statutes clearly prescribed the conduct charged.
 
 
 12
 In United States v. Weatherspoon, 581 F.2d 595 (7th Cir. 1978), the defendant was convicted under the RICO, mail fraud, and false statements statutes (the same statutes involved here). She claimed that the certifications she was alleged to have falsely made were too ambiguous to support a false statements prosecution because they did not adequately set out what information she was required to supply. The Seventh Circuit rejected that conclusion, but rested in part on a construction of the certification requirement. "Moreover, even if we agreed with Weatherspoon that the language is not a model of clarity, we note that the 'vagueness' argument was open to Weatherspoon at trial, for the Government was required under 18 U.S.C. § 1001 to establish not only that the certification was false, but also that Weatherspoon had made the certification knowing it to be false." 581 F.2d at 601 (emphasis in original).
 
 
 13
 Although the TECA has defined its "arising under" jurisdiction broadly, to include all EPAA issues, it has drawn a distinction between an issue "arising under" the EPAA and one that only peripherally involves a regulation.
 
 
 14
 In United States v. Cooper, 482 F.2d 1393 (Em.App.1973), the defendant was charged with violations of rent control regulations and with violations of the false statement statute, 18 U.S.C. § 1001 (one of the statutes invoked against the present defendants). He appealed to the Ninth Circuit and that court transferred the case to TECA. TECA took jurisdiction over the charges of violation of regulations, but treated the transfer as an untimely notice of appeal and dismissed the appeal. It concluded, however, that the false statement charge did not arise under the statute and was not within the appellate jurisdiction of TECA, even though it involved false statements on forms required by ESA regulations. "We start with the premise that a conviction under 18 U.S.C. § 1001 would be appealable only to a court of appeals, under 28 U.S.C. § 1291, unless the Stabilization Act provides otherwise We do not think that Count 1 being based on 18 U.S.C. § 1001, was a controversy " arising under" any title of the Stabilization Act or under regulations or orders issued thereunder." Id. at 1397.
 
 
 15
 Thus, the mere fact that a criminal conviction may rest on a false statement made while engaging in a business regulated by EPAA or ESA, does not of itself place the action within TECA's jurisdiction. The case or controversy itself must arise under the statute or regulations; the resolution of the issue must turn on proper interpretation of EPAA or ESA. Moreover, some initial determination of the scope of the EPAA or ESA regulations is necessary to determine who has jurisdiction. In Cooper, TECA had to determine that 18 U.S.C. § 1001 stated an offense separate and exclusive of ESA issues before it could determine that it lacked jurisdiction.
 
 
 16
 The ruling in Bray v. United States, 423 U.S. 73, 96 S.Ct. 307, 46 L.Ed.2d 215 (1975) was based on similar logic. In Bray the defendant was convicted of criminal contempt for failure to comply with a district court order to respond to an IRS subpoena issued pursuant to ESA. He appealed to the circuit court and it dismissed, holding that the appeal should be to TECA. The Supreme Court reversed:
 
 
 17
 The Act does not contain any provision prohibiting the violation of a district court's enforcement order or establishing penalties for such a violation Review in the TECA of criminal contempt convictions relating to compliance investigations or enforcement efforts is not necessary to assure uniform interpretation of the substantive provisions of the stabilization scheme.
 
 
 18
 423 U.S. at 75, 96 S.Ct. at 309.
 
 
 19
 Bray cited and expanded upon the holding in Cooper. The mere fact that a prosecution involves duties created by the ESA or EPAA is not decisive concerning who has jurisdiction. The crucial question is whether the case involves issues that must be decided by TECA in order that "uniform interpretation of the substantive provisions of the" statute may be achieved. Bray involved no such issues because the validity of the contempt charge "was not dependent on the existence of (ESA) violations or even the continuation of the (ESA) investigation." Id. See also United States v. Vixie, 532 F.2d 1277 (9th Cir. 1976).
 
 
 20
 This line of reasoning was further strengthened by the TECA's recent decision in United States v. Zang, 645 F.2d 999 (Em.App. 1981). The indictment in Zang was substantially similar to the one here. The defendants were charged under certain general criminal statutes for allegedly devising a fraudulent scheme through the use of their companies and the mail and wire communications, whereby they could resell "old" crude oil at "new" or "exempt" oil prices.
 
 
 21
 The defendants' motions to dismiss contended, inter alia, that 15 U.S.C. § 754 preempted the general criminal statutes of Title 18 and that the government was engaging in selective prosecution. The district court denied the defendants' motions. Defendants then sought a writ of mandamus from TECA ordering the trial court to sustain their motions to dismiss the indictment.
 
 
 22
 Relying extensively on Cooper and Bray, TECA concluded that the EPAA, as amended, does not "provide for or mention any of these grave (Title 18) felony offenses, and this Court has no jurisdiction of this appeal." At 1003. TECA's conclusion, quoted from Bray, has equal force here:
 
 
 23
 This judicial-review provision was designed to provide speedy resolution of cases brought under the Act and 'to funnel in to one court all the appeals arising out of the District Courts and thus gain in consistency of decision.' S.Rep. No. 92-507, p. 10 (1971), U.S. Code Cong. & Admin. News 1971, pp. 2283, 2292.
 
 
 24
 Nothing in the Act or in its legislative history indicates that Congress intended 'to include existing offenses, already covered under Title 18, under the umbrella of the Stabilization Act.' United States v. Cooper, 482 F.2d 1393, 1398 (TECA 1973). Review in the TECA of criminal contempt convictions relating to compliance investigations or enforcement efforts is not necessary to assure uniform interpretation of the substantive provisions of the stabilization scheme. Indeed, a requirement of such review would only serve to undermine the prompt resolution of Stabilization Act questions by burdening the TECA with additional appeals.
 
 
 25
 423 U.S. at 74-75, 96 S.Ct. at 308-309.
 
 
 26
 Appellees correctly point out that Zang did not decide the identical issues presented by this case. The focus in Zang was on "the felony offenses charged in the indictment," at 1003, rather than the defenses raised by the defendant. But this difference is irrelevant here. The appellees' defenses, like the charges in Cooper, Bray, and Zang, simply do not require interpretation of the substantive provisions of the EPAA.
 
 
 27
 We do not take a constricted view of TECA jurisdiction. TECA is vested with jurisdiction over any EPAA issue adjudicated by a district court whether or not the action can be said to arise under EPAA in the constitutional sense. However, not every case that in some manner involves the EPAA necessarily raises EPAA issues.[3]
 
 
 28
 In sum the defenses raised by the appellees do not involve "interpretation of the substantive provisions" of the EPAA. They involve interpretation of the proper scope of the criminal code statutes under which the defendants were charged.[4]
 
 
 29
 C. Jurisdiction and "Preemption"
 
 
 30
 The defendants contend also that the EPAA preempts application of the general criminal statutes to conduct regulated by EPAA. This claim is also within our jurisdiction.
 
 
 31
 In United States v. Vixie, 532 F.2d 1277 (9th Cir. 1976), the defendant contended that his false statement conviction was invalid because he should have been charged under the provisions of ESA dealing with compelling compliance with subpoenas. The circuit court, rather than submitting that question of preemption to TECA, concluded that nothing in ESA suggested that its compliance provisions were the exclusive remedy for failure to comply and that the defendant did not simply fail to comply, she falsely complied; the court therefore concluded that there were no preemption.
 
 
 32
 In United States v. Gilliland, 312 U.S. 86, 61 S.Ct. 518, 85 L.Ed. 598 (1941), the Supreme Court considered whether provisions of the Hot Oil Act, 15 U.S.C. §§ 715-715(d), (requiring affidavits concerning the amount of oil shipped from wells) preempted prosecutions under the predecessor of 18 U.S.C. § 1001 for false statements on affidavits even though the regulations may have been violated as well. The question was not phrased as an issue involving the interpretation of the regulations, but as an issue involving the interpretation of the scope of the criminal statute. The court held that the provisions of the general false statements statute were not limited to the enforcement of the "hot oil" regulations and that the later "hot oil" act did not repeal the earlier general statute so far as the latter applied to "hot oil" documents. The statutes were complimentary, not exclusive. See also United States v. Carter, 526 F.2d 1276 (5th Cir. 1976) (determining that the false statement provisions of 15 U.S.C. § 645(a) do not preempt 18 U.S.C. § 1001, even though they may both reach false statements on SBA forms. 18 U.S.C. § 1001 requires proof of elements not required by the other statute).
 
 
 33
 Because the preemption issue concerns only the EPAA's effect on an unrelated criminal statute, "(r)eview in the TECA is not necessary to assure uniform interpretation of the substantive provisions of the stabilization scheme." Bray v. United States, 423 U.S. at 75, 96 S.Ct. at 309 (emphasis added). Bray also cautions us to avoid burdening the TECA with additional appeals, so that the TECA will not be prevented from promptly deciding appeals involving substantive provisions of the regulatory schemes. Id. Accordingly, we should not construe a peripheral issue as "arising under" the EPAA.[5]
 
 D. Further Challenges to the Indictments
 
 34
 Appellees' remaining points, which should have been disposed of by the district court, require little discussion.
 
 
 35
 Appellees challenge the government's use of the Racketeer Influenced and Corrupt Organizations statute, 18 U.S.C. § 1961 et seq. on essentially two grounds. First, they contend that RICO's language is unconstitutionally vague. See Grayned v. City of Rockford, 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972). Second, they argue that the indictments fail to state an offense because they, the defendants, are not members of organized crime, the explicit target of RICO.
 
 
 36
 Appellees vagueness argument focuses on the definition of "racketeering activity." 18 U.S.C. § 1961. We must cut short appellees proposed tour of the RICO statute because they lack standing to undertake it. See Association of Data Processing Service Organizations v. Camp, 397 U.S. 150, 152-153, 90 S.Ct. 827, 829-830, 25 L.Ed.2d 184 (1970). The "racketeering activity" for which the Uni Oil defendants were indicted consisted of conspiracy and substantive "violations of the Mail Fraud Statute as charged in Counts Three through Thirty-four and violation of the State of Texas Commercial Bribery Statute." Contrary to appellees professed bafflement, both the language of the indictment charging racketeering and the sections of the statute from which it is drawn are composed of easily understood terms. The language is more than sufficient "to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute." United States v. Harriss, 347 U.S. 612, 617, 74 S.Ct. 808, 811, 98 L.Ed. 989 (1954).
 
 
 37
 In order to dismiss an indictment for failure to state an offense we must find that the indictment does not "contain( ) the elements of the offense intended to be charged." Russell v. United States, 369 U.S. 749, 763, 82 S.Ct. 1038, 1046, 8 L.Ed.2d 240 (1962), United States v. Meacham, 626 F.2d 503, 507 (5th Cir. 1980). Although the legislative history of RICO vividly demonstrates that it was primarily enacted to combat organized crime, nothing in that history, or in the language of the statute itself, expressly limits RICO's use to members of organized crime. Stated differently, membership in organized crime is not a necessary element of a RICO conviction. Accordingly, appellees' argument on this point fails.
 
 
 38
 Appellees also allege that the government has engaged in selective prosecution.
 
 
 39
 To support a defense of selective or disc(r)iminatory prosecution, a defendant bears the heavy burden of establishing, at least prima facie, (1) that, while others similarly situated have not generally been proceeded against because of conduct of the type forming the basis of the charge against him, he has been singled out for prosecution, and (2) that the government's discriminatory selection of him for prosecution has been invidious or in bad faith, i. e., based upon such impermissible considerations as race, religion, or the desire to prevent his exercise of constitutional rights. These two essential elements are sometimes referred to as 'intentional and purposeful discrimination.'
 
 
 40
 United States v. Johnson, 577 F.2d 1304, 1308 (5th Cir. 1978). In a sentence, this "heavy burden" has not been carried by the defendants. Of course, our conclusion does not prohibit them from further developing the record to support their contentions.
 
 
 41
 The Uni Oil appellees also contend that count 1 is defective for failing to delineate the elements of commercial bribery. An indictment is sufficient if it clearly informs the defendant of the precise offense of which he is accused so that he may prepare his defense and if it states facts adequate to permit the defendant to plead former jeopardy in a subsequent prosecution. Russell v. United States, 369 U.S. 749, 763-64, 82 S.Ct. 1038, 1046-47, 8 L.Ed.2d 240 (1962). Furthermore, as the Supreme Court has explained, the sufficiency of an indictment "is not a question of whether it could have been more definite and certain." United States v. Debrow, 346 U.S. 374, 378, 74 S.Ct. 113, 115, 98 L.Ed. 92 (1953) (emphasis added). Although we do not condone the government's sloppiness, we find the indictment passes the test outlined above. Despite the government's failure to allege each element of commercial bribery separately, the indictment contains copious facts which adequately apprise the defendants of the nature of the charge against them. Therefore, the indictment's deficiency is not material. See United States v. Ylda, 643 F.2d 348 at 352 (5th Cir. 1981).
 
 
 42
 The Mapco appellees also urge that counts 1 through 23 are duplicitous because in addition to charging RICO and mail fraud violations, each count also charges the additional offense of conspiracy to defraud the United States, 18 U.S.C. § 371. A duplicitous indictment charges two or more distinct offenses in a single count. Bins v. United States, 331 F.2d 390 (5th Cir.), cert. denied, 397 U.S. 880, 85 S.Ct. 149, 13 L.Ed.2d 87 (1964), Fed.R.Crim.P. 8(a).
 
 
 43
 A straightforward reading of the indictment rebuts appellees' effort to interject § 371 conspiracies into counts 1-23 through a hypertechnical reading of selected parts of the various counts. Counts must be read as a whole to determine their meaning. See United States v. Markham, 537 F.2d 187, 192 (5th Cir. 1976), cert. denied, 429 U.S. 1041, 97 S.Ct. 739, 50 L.Ed.2d 752 (1977). The dangers of duplicity, that it will be impossible to determine what the jury has found and that the defendants may be subject to double jeopardy in the event of a subsequent prosecution, are not present in this case. Bins v. United States, 331 F.2d 390, 393 (5th Cir.), cert. denied, 397 U.S. 880, 85 S.Ct. 149, 13 L.Ed.2d 87 (1964). Unlike Bins in which the defendant was charged with two separate acts of false uttering in the same count, only one violation is charged in each count here. Count 1 charges a RICO conspiracy, count 2 a substantive RICO violation, and counts 3-24 each rely on a separate mailing in charging mail fraud.
 
 
 44
 Next, Mapco appellees contend that the mailings in counts 3-18 were simply routine, regularly employed mailings and hence cannot form the basis for mail fraud charges. See United States v. Tarnopol, 561 F.2d 466, 472 (3d Cir. 1977). The record, as developed to date, does not support this view of the mailings. Rather, the indictment clearly charges that the mailings were used "for the purpose of executing" a scheme or artifice to defraud. See Parr v. United States, 363 U.S. 370, 80 S.Ct. 1171, 4 L.Ed.2d 1277 (1960). If the appellees develop this argument at trial they may have valid grounds for a motion for judgment of acquittal.
 
 
 45
 Finally, Mapco appellees contend that counts 24-29 fail to state an offense under 18 U.S.C. § 1001 because they refer only to statements made to a private purchaser. Section 1001 requires that the false statement be made in a "matter within the jurisdiction of any department or agency of the United States." 18 U.S.C. § 1001 (West 1976). This jurisdictional requisite has been satisfied.
 
 
 46
 The indictment sufficiently charges that the allegedly false certificates of defendants were relied on by refiners who prepared records which ultimately influenced FEA calculations. 18 U.S.C. Sec. 1001 is designed to protect federal funds and functions from fraudulent interference. In order to achieve this objective, it is well settled that a false statement need not be made directly to a federal agency in order to sustain a Sec. 1001 conviction. United States v. Baker, 626 F.2d 512, 514 (5th Cir. 1980); United States v. Hooper, 596 F.2d 219 (7th Cir. 1979). If, however, subsequently developed evidence shows that the certification in question did not influence FEA calculations, either directly or indirectly, the Appellees may have valid grounds for a motion for judgment of acquittal on these grounds.
 
 
 47
 We find no merit in appellees' remaining arguments. Accordingly, the judgment of the district court is reversed and remanded for proceedings consistent with this opinion.
 
 
 48
 REVERSED and REMANDED.
 
 
 
 [1]
 For convenience, we cite the applicable regulations that were in effect until January 28, 1981. See 46 Fed.Reg. 9909 (1981). The instant case actually involves ancestor provisions, since amended
 
 
 [2]
 The price at which domestic crude oil may lawfully be sold depends inter alia on its origin. As resellers, appellees were obliged to "certify" that the oil they traded came from "old" or "new" wells since different ceiling prices applied to each. The gravamen of the Government's charge is that appellees purchased "old" oil and resold it as "new," willfully using fraudulent means to miscertify it in the process
 
 
 [3]
 Relying heavily on United States v. Wickland, 619 F.2d 75 (Em.App.1980), appellees urge us to characterize any issue "interwoven with" an analysis of the EPAA as an EPAA issue. Close examination shows, however, that Wickland supports a more stringent standard in order to find an EPAA issue. In Wickland, the government sought to enforce a subpoena issued pursuant to the EPAA. The defendant urged that the government should be equitably estopped from enforcing the subpoena. The court characterized the issue as "a federal agency's attempt to fulfill its duty under statutes and regulations over which this court (TECA) has exclusive jurisdiction." Id. at 78. It found that "(a)ny 'general questions of administrative law' are clearly interwoven with provisions of the ESA and EPAA and involve policy questions directly affecting the EPAA and its enforcement." Id. at 79 (emphasis added). Wickland stands in sharp contrast to this case. Here, there are no "policy questions directly affecting the EPAA." Nor is a federal agency acting pursuant to statute and regulations over which TECA has exclusive jurisdiction. Rather, the United States Attorney has indicted the defendant for criminal offenses under Title 18
 
 
 [4]
 Appellees' argument that an individual director, officer, or agent cannot be imprisoned for more than a year "unless he also has knowledge or reasonably should have known of notice of noncompliance received by the corporation from the President" 15 U.S.C. § 754 is inapplicable since defendants are charged with Title 18 offenses, not violations of the EPAA
 
 
 [5]
 Although we have found that the question presented here is not properly cast as one of preemption, we note that TECA has held that the Title 18 offenses in the instant indictments are not preempted by 15 U.S.C. § 754. United States v. Zang, 645 F.2d 999 (Em.App. 1981). See Mobile Oil Corp. v. Tully, 639 F.2d 912 (2d Cir. 1981) (resolution of whether New York state tax on gross receipts of oil companies doing business in New York was preempted by EPAA transferred to TECA because a thorough and careful examination of the EPAA was required)