**OWL CONSTRUCTION CO., INC.,**
**Plaintiff-Appellant,**

v.

**RONALD ADAMS CONTRACTOR, INC.,**
**et al., Defendants-Appellees.**

No. 83–3424
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

March 23, 1984.

H.P. Rowley, III, New Orleans, La., for plaintiff-appellant.

Hulse, Nelson & Wanek, John A. Stewart, New Orleans, La., for defendants-appellees.

Before REAVLEY, RANDALL and WILLIAMS, Circuit Judges.

1. For purposes of reviewing the granting of a Rule 12(b)(6) motion to dismiss, we accept the plaintiff's factual allegations as true.

2. 18 U.S.C. § 1962 (1982) provides in pertinent part:

  (c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

PER CURIAM:

Plaintiff Owl Construction Company, Inc. ("Owl") appeals the dismissal of its complaint for failure to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). We reverse and remand.

Owl, a subcontractor on a federal construction project in Lafourche Parish, Louisiana, hired Ronald Adams Contractor, Inc. ("Contractor") to deliver 5,000 cubic yards of sand for the project.[1] After making delivery, Contractor sent Owl two invoices totalling $18,336.00. When Owl paid only $4,000.00 of this amount, Ronald J. Adams, president of Contractor, filed a lien affidavit against the project, claiming that Owl owed Contractor $15,052.66. Attached to the affidavit was a purported copy of the invoices Contractor had sent to Owl, which contained provisions for finance charges and attorneys' fees in the event of late payment.

After the lien was filed, Owl protested that it owed Contractor $14,336.00, not $15,052.66, and that neither of the two invoices it received contained any provisions for finance charges or attorneys' fees in the event of late payment. Nevertheless, Owl paid Contractor $15,052.66, plus $3,763.17 in attorneys' fees, to have the lien cancelled.

Owl then filed this complaint against Ronald J. Adams, seeking treble damages under the civil remedies provisions of Title IX of the Organized Crime Control Act of 1970 (Racketeer Influenced and Corrupt Organizations), popularly known as "RICO." Owl alleges that Adams both participated in and conspired to participate in mail and wire fraud when filing the lien affidavit and invoices against the project. RICO makes it unlawful for any person to conduct the affairs of an enterprise through a pattern of racketeering activity.[2] Owl as-

serts that this mail and wire fraud constituted a pattern of racketeering activity and that Contractor was the enterprise through which Adams conducted his racketeering activities. Owl also alleged pendent state claims against Contractor.

The defendants moved to dismiss Owl's RICO action because Owl had failed to allege that the defendants were involved in organized crime. The district court granted the defendant's motion and, because federal jurisdiction was predicated upon RICO, Owl's pendent state claims were also dismissed.

In *United States v. Uni Oil, Inc.*, 646 F.2d 946 (5th Cir.1981), we held that "[a]lthough the legislative history of RICO vividly demonstrates that it was primarily enacted to combat organized crime, nothing in that history, or in the language of the statute itself, expressly limits RICO's use to members of organized crime." *Id.* at 953. Although *Uni Oil* involved a criminal prosecution, we see no reason to limit our holding in this regard to criminal proceedings. We join the Second, Seventh and Eighth Circuits in holding that civil actions under RICO are not limited to contexts in which a tie to organized crime is alleged. *See Moss v. Morgan Stanley Inc.*, 719 F.2d 5, 21 (2d Cir.1983); *Bunker Ramo Corporation v. United Business Forms, Inc.*, 713 F.2d 1272, 1287 n. 6 (7th Cir.1983); *Bennett v. Berg*, 685 F.2d 1053, 1063–64 (8th Cir.1982). These courts and the commentators have persuasively and exhaustively explained why the RICO statute and its legislative history do not require a RICO plaintiff to prove the defendant is connected to organized crime; we need not reiterate those reasons here. *See, e.g.,* Blakey, *The RICO Civil Fraud Action in Context: Reflections on Bennett v. Berg*, 58 Notre Dame L.Rev. 237, 284–85 (1982); Note, *Civil RICO: The Temptation and Impropriety of Judicial Restrictions*, 95 Harv.L.Rev. 1101, 1106–1109 (1982). Though we intimate no view as to the merits of Owl's complaint, it cannot be

(d) It shall be unlawful for any person to conspire to violate any of the provisions of

dismissed on the ground that Owl failed to allege that Adams was involved in organized crime. Thus, we REVERSE and REMAND the case for further proceedings.

subsections ... of this section.